56 CCPA
**Application of THUNDERBIRD PRODUCTS CORPORATION.**

**Patent Appeal Nos. 8084, 8085.**

United States Court of Customs and Patent Appeals.
March 6, 1969.

Eugene F. Buell, Buell, Blenko & Ziesenheim, Pittsburgh, Pa., for appellant.

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel) for the Commissioner of Patents.

[Oral argument January 9, 1969 by Mr. Buell and Mr. Nakamura]

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,* Judges.

RICH, Judge.

These two appeals from decisions [1] of the Trademark Trial and Appeal Board are treated together in this opinion as the same parties are involved and the issues are almost identical.

The appeals are in appellant's applications [2] for registration on the Principal Register of the trademarks "DUAL CATHEDRAL HULL" (No. 8084) and "CATHEDRAL HULL" (No. 8085) for "Boats, Particularly of Molded Fiber-Glass and the Like."

Notices of Publication that the respective applications were to be published on November 19 and 26, 1963 were issued. Although no adverse party opposed either application, the examiner refused registration of the marks by identically worded letters dated April 27, 1965. (The record here does not show what occurred in the interval.) In them, he quoted extracts from various publications, hereinafter discussed, referring to "cathedral hull" boats and, in addition, reproduced textbook definitions of an aeronautical term, "cathedral angle." [3] It was apparently the examiner's position that the term "cathedral hull," as applied to boats, is a reference to a type of hull design and therefore not capable of distinguishing appellant's boats.

The board, in its opinion affirming the rejection of both applications, found there was substantial support for the examiner's position that "cathedral hull" identifies a hull type, stating:

It seems clear that applicant has used the designation "cathedral hull" to indicate a type of hull rather than to indicate origin. The specific reference in the newspapers and magazines noted by the examiner indicate an acceptance of said term to describe a specific type of hull rather than a boat produced by applicant.

It is clear that the underlying, but not specifically expressed, reason registration has been refused is because the Patent Office does not consider the marks sought to be registered to be marks by which appellant's goods "may be distinguished from the goods of others" as required by section 2 of the Trademark Act of 1946 (15 U.S.C. § 1052) because the term "cathedral hull" applied to a boat is descriptive of a type of hull configuration. The descriptive nature of the marks is supposed to arise not so much from the usual architectural or aeronautical connotations

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 151 USPQ 754, abstract.

2. Serial Nos. 167,344 and 167,345, both filed on April 22, 1963.

3. The following portion is reproduced from the Letter of the Examiner:
    In Baughman's Aviation Dictionary and Reference Guide, Third Edition, 1951, Aero Publishers Inc., page 55 shows; "CATHEDRAL ANGLE:

The opposite of dihedral angle, i. e., a condition in which the wings slope downward from the plane of symmetry of the airplane".
    In Jordanoff's Illustrated Aviation Dictionary, Copyright 1942 by Harper & Brothers the following is found; "cathedral angle—(Fig. 446) The acute angle between a line perpendicular to the plane of symmetry and the projection of the wing axis on a plane perpendicular to the longitudinal axis of the airplane. See also dihedral angle".

of the word[4] as from an alleged general recognition by the boating public.

We are thus presented with a situation in which an unopposed mark is refused registration because the mark is alleged to have entered general usage to designate a particular type within the class of goods for which registration is sought. It is therefore necessary for us to consider the literature references which the examiner and the board relied upon, to see whether they support the examiner's position. As the record is deficient in not including the original publications cited, we must refer to the following extract from the letter of the examiner:

> The following is noted; In Rudder April, 1965 page 78, "When sailboat designers turned to fiberglass, they retained the same form, although their cousins, the outboard designers, have tried all kinds of shapes; witness the cathedral hulls". In The Washington Post, Feb. 21, 1965 (Potomac Section) page 26; "Outboard runabouts are going more and more to fiberglass and to the deep V longitudinal-step hull and the cathedral form hull, two design ideas that have grown fast in popularity because of their seaworthy, smooth-ride characteristics". In Yachting, Boat Owners Buyers Guide, 1965; page 18, "Cathedral-hulled Maritime 1700 has a bigger sister cruising in our 1B: Metal listings (Maritime Prods. Corp.)"; page 36 "* * IB/OB-powered 20′ all-welded aluminum cathedral-hull cruiser; fully-enclosed head and forward bunks: Maritime Products Corp * * *"; "* * Arapaho 20′ day cruiser, Cherokee 28′ sportfisherman, Formula Jr. 17′3 ski runabout. Fiberglass; cathedral hulls except Formula which has longitudinal deep-V step design: Thunderbird Corp. * * *"

Reviewing these uses of the term "cathedral hull," it appears to us that the term, by 1965 at least, was in general use

to describe a specific type of hull rather than a boat produced by applicant, as found by the board. Furthermore, we think that the use of the term appearing in a national newspaper and two boating publications has a significance greater than that of a few sporadic unauthorized uses, as appellant argues.

One question remains, however, and that is whether the fact that the mark had become descriptive by 1965 should defeat trademark application filed in 1963, at which time, as far as the record shows, the mark was suitable for registration. In DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 48 CCPA 909 (1961), involving an opposition to the proposed mark "Power Shop" which the opposer (not having a registration of the proposed mark) contended he had been using descriptively, we said:

> The first step toward that decision is our conclusion that where opposer is not claiming trademark rights but merely freedom to continue a descriptive use, *the situation must be judged and the right to registration decided on the basis of the factual situation as of the time when registration is sought.* Registration in this case was not applied for until August 17, 1956, by which date Magna had been plugging its "Shopsmith" as a "complete power shop in one tool" for nearly seven years. Regardless of whether "power shop", prior to such use, was descriptive of woodworking power saws, that promotion certainly gave the term a descriptive significance in the very market where DeWalt's radial-arm saw is being sold. [Emphasis added.]

That the court considered in *DeWalt* that the time "when registration is sought" was the filing date of the application is apparent from the following passage:

> Trademark rights are not static. A word or group of words not descriptive today may, through usage, be descriptive tomorrow. And, conversely, as is

4. Although some arguments are advanced by the solicitor that the structure of the hulls marked with the proposed mark bear a relation to a cathedral angle, we do not find it necesary to pass upon this contention in view of the adequacy of the other reasons for supporting the board's decision, discussed hereinafter.

recognized in section 2(f), the *possibility* always exists, with respect to words *capable* of distinguishing an applicant's goods in commerce, that descriptive words *may* become registrable trademarks. *It is for this reason that we are considering the situation as of 1956* and disregarding the dispute over priority. [Emphasis added.]

We note that in *DeWalt* the mark was already descriptive by the time the trademark application was filed and the case does not therefore provide us with a solution in the present situation where the record does not show the generically designative connotations of the mark "cathedral hull" to have been acquired until some period after the filing date.

However, *DeWalt* furnishes a starting point for a development of the law in this area which leads next to McCormick & Co., Inc. v. Summers, 354 F.2d 668, 53 CCPA 851 (1966). McCormick, who since 1955 had been using the phrase HOUSE OF FLAVOR in its advertising, opposed registration on the Principal Register of HOUSE OF FLAVORS by Summers who had a registration of the mark on the Supplemental Register and alleged use of the mark since 1932. The Summers application for registration on the Principal Register was filed on November 23, 1959; however, the Trademark Trial and Appeal Board, determining the issue of registrability, considered forty-six letters from customers of Marion-Kay Products dated September 27, 1961, almost two years subsequent to the filing date of the application. It would appear, therefore, that the board was considering the issue of registrability against the factual situation prevailing in 1961 at the time the problem was before the board rather than against the factual situation prevailing when the application was filed in 1959. In *McCormick* this court said "registrability of a mark must be determined on the basis of facts as they exist at the time when the issue of registrability is under consideration" and it appears to us consistent with *McCormick* and *DeWalt* as well as sound in principle to decide in the present appeal that the time when the issue of registrability is under consideration extends at least to the time the application is acted on in the Patent Office.

 To summarize, the board properly considered the literature references published after the filing of the application and correctly decided that the term "cathedral hull" designates a type of boat hull. It is therefore descriptive and not registrable as a trademark. The decision of the board is therefore affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.