**REMINGTON PRODUCTS, INC., Appellants,**

v.

**NORTH AMERICAN PHILIPS CORPORATION, Appellee.**

**Nos. 89–1511, 89–1512.**

United States Court of Appeals, Federal Circuit.

Jan. 3, 1990.

Frank J. Thompson, Stamford, Conn., argued, for appellants.

Ernestine C. Bartlett, Tarrytown, N.Y., argued, for appellee. With her on the brief was Robert T. Mayer.

Before RICH and NEWMAN, Circuit Judges, and DUMBAULD, Senior District Judge.*

RICH, Circuit Judge.

This appeal is from the March 31, 1989, decision (unreported) of the Patent and Trademark Office Trademark Trial and Appeal Board (board) in consolidated cancellation and opposition proceedings involving the term TRAVEL CARE. North American Philips Corporation (Philips or Norelco)[1] holds principal register registration No. 1,340,374 of TRAVEL CARE for "electric travel irons and wrinkle remover/fabric steamers," registered June 11, 1985. On October 2, 1984, Philips filed application serial No. 527,612 to register the same mark for "adaptor plugs, voltage converters, and kits comprising adaptor plugs and voltage converters." Remington Products, Inc. (RPI) filed an opposition to the application and petitioned to cancel the registration. The two proceedings, Opposition No. 72,516 and Cancellation No. 15,201, proceeded separately until they reached the board which decided them in a single opinion, dismissing both because it was of the opinion that TRAVEL CARE is a registrable trademark for the goods enumerated above. RPI brings these two appeals. In this single opinion, we *reverse* in both.

It is RPI's position in both the opposition and cancellation proceedings that "travel care," a combination of two common words, is descriptive of the products for

---

* Honorable Edward Dumbauld, Senior Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Norelco Consumer Products, whose goods are named in Philips' registration and application here involved, is a division of North American Philips Corporation, appellee.

which it has been, and is sought to be, registered by appellee. More particularly, RPI asserts that the goods are in a *category*, namely personal care products used by travelers, which "travel care" aptly describes. In support of its position, RPI produced evidence to show that a company which is in competition with Norelco and which appears to have common ownership with RPI, Franzus Company Inc. (Franzus), has extensively used "travel care" in a descriptive or generic sense to describe the very goods for which Norelco has registered, and desires to register again, "travel care" as a trademark, thus securing to itself exclusive rights to the use of the words in connection with the sale of the named goods. RPI further asserts that, like Franzus, it too is in the business of selling the same line of goods, as are others.

At the outset of its opinion, the board held:

Plaintiff's [RPI's] *standing* is not in issue, since the record shows that the plaintiff markets a line of travel products, including converters and adaptors, travel irons, hair dryers and shavers, and promotes these products as being useful for travel. [Our emphasis.]

The relationship of the goods to travel is clear from the record but a word of explanation may make it clearer. The travel irons and the fabric steamers of Philips' registration are promoted for use by travelers to enable them to dewrinkle and press their clothes, and they are electrically operated. The goods named in the opposed application, adaptor plugs and voltage converters, are intended for use by travelers, enabling them to use all kinds of small electric appliances in foreign countries where the electrical outlets are different from those in this country in size and shape and where the voltage of the power supply at the outlet may differ from that in this country. Therefore, kits containing a variety of plugs and converters are frequently sold. There are several suppliers competing in this market.

Another aspect of these goods is that they all may be said to relate to personal care. One of RPI's witnesses was Robert J. Pape, general manager of the Personal Care Group of the North American Philips Corporation, within the Norelco Consumer Products Company division. Mr. Pape testified that he was the division manager "for travel care and man care products." In further explanation, we refer to the "Full Line Brochure" of Norelco, four editions of which were put in evidence, all dated 1986. The latest or fourth edition is Plaintiff's Exhibit 6. It has 26 pages and is divided up into sections, each with a heading naming different categories of merchandise as follows: Men's Razors, Ladies' Razors, Personal Care, Man Care, Travel Care, Garment Care, Clean Air, Health Care, Kitchen Appliance, Home Products, Home Security, Men's Razor Blister Products, Ladies' Razor Blister Products, and Personal Care Blister Products. The last three items refer to so-called "blister" packaging of the merchandise on cards. The catalog ends with four pages listing accessories for previously shown products. The first twenty pages are divided into nine rectangular spaces in 6 to 8 of which on each page are product illustrations. At the top of almost every rectangle, the trademark NORELCO in association with an "N" logo and an R-in-a-circle, the statutory marking per 15 U.S.C. § 1111, appears. The above listed category headings appear in otherwise empty rectangular spaces in ordinary bold-face type.

In the Travel Care section there are 11 items under the pictures of which are 9 descriptions in solid capital letters containing TRAVEL CARE. A typical example is: "NORELCO TRAVEL CARE COMPACT SPRAY IRON WITH *DUAL VOLTAGE FOR WORLDWIDE USE.*" In neither the heading of the Travel Care products section nor in the individual item headings is there any indication that the words TRAVEL CARE are intended to be a trademark or that they have been registered, in contrast with the frequent indication, by the statutory symbol and otherwise, that NORELCO is a trademark. Furthermore, NORELCO is obviously a coined term, which

"travel care" is not. The same statement applies to the second and third editions.[2]

RPI produced testimony from the president of Franzus, Mr. Stuart Leventhal, in support of its opposition and petition to cancel, which may be summarized as follows. Franzus sells the same product line as that containing the goods named in Norelco's registration and application and in connection with advertising the same has been using "travel care" in a generic sense concurrently with Norelco's use. Examples are an ad addressed to the trade (Ex. 3), entitled "Traveler's Insurance," containing at the beginning the expression "the most extensive collection of world-class travel care products available today" and at the end "the full line of Franzus travel care products." Some 25,000 copies of this ad were exposed to the industry through publication in two magazines. A mailing piece distributed to 10,000 Franzus' customers, actual and prospective, offering a "travel package" consisting of a hair dryer and a clothes steamer, contains a blaring headline, pictures and brief descriptions of the two items, and this central message: "Get both of these terrific Franzus travel care products for just $12.99." Franzus' 1985 "Dealer Product Guide and Price List" contains on the cover three sentences the second of which refers to the "most extensive collection of world-class travel care products available today." (Ex. 6.) Inside, the Guide uses "travel care" twice in a similar manner in describing items. In excess of 100,000 copies, with a cover letter from the president using the same expression as the cover, were distributed.

Mr. Leventhal also testified that Franzus, as best he understood it, became a subsidiary in 1987 of Remington Technology which was a subsidiary of appellant RPI. He also stated that although Philips (Norelco) was a competitor he had never received from that company a complaint about the use of "travel care" in the descriptive manner explained above.

Mr. William R. Lenahan, vice-president and general manager of Franzus for two months also testified. Prior to holding that position, he had, for two and a half years, been employed by RPI and prior to that he had been a division manager of North American Philips Corporation where he was "responsible for the profit and loss statement on the health products and clean air machines." He testified that the products listed under the heading "Travel Care" in Norelco's catalog were "all products [which] would be used for travel, meaning a consumer's need when they travel." He corroborated the testimony of Mr. Leventhal about the distribution of Franzus literature using "travel care" in a descriptive sense. He also said that their sales representatives and trade journalists used "travel care" as "a classification of a particular product." He confirmed that Franzus was a subsidiary of Remington Technology, Inc., and he believed Remington Products and Remington Technology to be commonly owned by Mr. Victor Kiam. A Remington brochure he identified is in evidence. It identifies Mr. Kiam on its cover as "Victor Kiam America's most recognizable spokesperson" and shows a TV screen with his picture. The brochure features men's and ladies' travel shavers, travel steam irons, converters and adaptor plugs and kits, clocks and other travel needs. Obviously addressed to the trade, the brochure refers to "DYNAMIC TRAVEL CENTER DISPLAYS—'One Stop' shopping for all your customer's travel needs—get more mileage out of your travel ads and promotions!!" It also promises "boundless publicity" through Victor Kiam "Whose previous engagements include: 60 Minutes, Face the Nation, McNeil–Lehrer Report, Wall Street Journal, Merv Griffin, plus scores of others."

A final piece of evidence of the descriptiveness of "travel care" is an article in *Housewares* magazine, June 21–27, 1985 issue, put in evidence by RPI during the testimony of Norelco's Mr. Pape. The headline of the article, designated a

---

**2.** The First Edition of this brochure, without explanation, has an R-in-a-circle following "NORELCO TRAVEL CARE" under each illustration which was omitted in the subsequent three editions in evidence. The category heading, however, had no such symbol.

"*Housewares* Special Report," reads: "Retailers Test Single Travel Care Sections." The gist of the article is that many retailers selling the personal care items *used by travelers* and made by companies such as Franzus, Norelco, Braun, GE, Sunbeam, Black and Decker, Sanyei, and Krups, including those here involved, had been displaying those items separately from other personal care or strictly household items and in connection with or adjacent to departments attracting travelers such as luggage departments or featuring them as separate travel shops. The body of the article refers four times to "travel personal care" items. The significant fact, as we see it, is that the writer of the headline selected the term "travel care" to describe these merchandising sections and the category of goods they contain.

The publication of this article produced mixed feelings in Mr. Pape who wrote Mr. Gittlitz, publisher of *Housewares*, on July 24, 1985, to thank him for the publicity but to protest the use of "Travel Care" in the headline because it was a registered trademark of North American Philips which Norelco had been using for 13 months on products in the field. He asked for "a small correction notifying your readers of the fact that what you are using *as an overall category name* is actually the exclusive mark of one of the industry leaders." (Our emphasis.) The registration had been issued about six weeks before the date of the letter. In his testimony explaining the letter, Mr. Pape referred to "Travel Care" as "a trademark which we had been issued." [3]

Consideration of the facts of this case produces a sense of deja vu by reason of an opinion written over twenty-eight years ago in *DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656, 129 USPQ 275 (CCPA 1961). That case involved a fact pattern which exactly parallels the pattern here

except for details such as names and numbers. It is, therefore, surprising that *DeWalt* has not been cited by the board or by either party. Nevertheless, it is binding precedent in this court under *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982). We consider *DeWalt* to be controlling here and to require reversal of the board's decisions.

The opposition portion of this case is the same as that in *DeWalt* wherein Magna, the opposer, asserted the *right to the free use* of a two-word term on the ground it had been in extensive use as descriptive of the goods. The term was "power shop." DeWalt applied for registration of "Power Shop" for woodworking saws. It was making and selling radial-arm saws. Magna sold a combination convertible machine known by the trademark "Shopsmith" which could function as either a table saw or a drill press and other tools, in connection with which it had extensively used in advertising, in a descriptive sense, the term "power shop," as in the expression "the complete power shop in one unit." DeWalt argued, inter alia, that power shop did not describe a saw because a shop is not a tool and a saw is not a shop. The court, nevertheless, held that Magna's extensive descriptive use had given the term "a descriptive significance in the very market where DeWalt's radial-arm saw is being sold." The court viewed "power shop" as simply a short form of "power workshop" and held it "merely descriptive" within the meaning of 15 U.S.C. § 1052(e), as applied to the goods of *either* party. Magna, like RPI here made no claim to any trademark right and wished merely to be free to use a term.

Norelco argues in this case, and the board so held, that the proper description of the category of goods named in the application and registration at bar is "travel personal care," not "travel care," which it claimed to have "coined," wherefore

**3.** Holders of registrations of trademarks must appreciate that the Patent and Trademark Office does not issue trademarks but only registers terms or marks or symbols that have already become trademarks, by virtue of the actions of their creator-owners, or at least are capable of becoming trademarks. The issues in this case are whether "Travel Care" now functions as a trademark for the goods named in the application and registration and whether the words fall within the prohibition of the statute against registering marks which, when applied to the goods are "merely descriptive."

"travel care" should be registrable as a trademark. This is, first of all, a concession that "travel personal care" is descriptive. Does omitting the word "personal" and shortening it to the more concise, more easily used, and now extensively used, "travel care" make it less so? We think not. The short form is still descriptive and is merely a somewhat broader category of goods, not being limited to *personal* care, but inclusive of the care of anything while traveling. Viewed in the context of its use, with the showing of the products, its meaning is perfectly clear and far from arbitrary or merely suggestive.

As was the case in *DeWalt* where we found that both parties had been using "power shop" in a descriptive sense, here too the record shows that not only Franzus used "travel care" descriptively but so did Norelco. Its use as a category heading in its catalogs, as one of a total of five "care" categories, and in the descriptions of individual travelers' items in association with the trademark Norelco are not the kind of uses normally associated with trademarks. As previously stated, except for the first edition of its brochure, there is not the slightest suggestion in its publications that Norelco believed it to be a trademark. Meanwhile the trade to which both parties sold their travel care merchandise was being saturated with Franzus literature treating it as nothing more than a designation of a class of merchandise. The result was that "travel care" could not thereafter meet the essential characteristic of a trademark—that it *distinguish* the goods of one merchant from those of another. 15 U.S.C. § 1127. The reason it cannot do so is that usage in the trade as a category designation has rendered it descriptive and therefore incapable of designating origin. If both Norelco and Franzus put travel irons on the market associated with the words "Travel Care," how can anyone, in the absence of some other mark, tell the origin of either of them?

In the board's opinion it made this significant admission:

> We have no doubt that Franzus has used "travel care" in a generic manner, to refer to the genus of travel-related

products which includes the goods identified in defendant's application and registration.

It then proceeded in various ways to deprive that *fact* of any legal significance in this case, and therein lies its error. First, it said this was only one of the factors it could consider. Second, it was a "third-party use." Third, that exposure to that use was "limited to the trade, so that the ultimate consumers, who are also part of the relevant public, would have no knowledge of this usage." Fourth, there is no evidence that the trade recognizes "travel care" as identifying a category of products. Fifth, "an inference can be drawn that if 'travel care' were the apt descriptive term for such products that more than just one company would use it to describe their goods." For all these reasons, the board held that RPI *had not proved* "travel care" to be descriptive of Norelco's goods and concluded:

> While "travel" is descriptive of goods used for travel ... when combined with "care" the phrase is suggestive because ... the products are not for the care of travel.

We entirely disagree with this line of reasoning. It is, perhaps, the "expertise" of the board which appellee asks us to recognize, hold this appeal frivolous, and award it attorney and other fees, an invitation we decline.

The board's reason for holding "travel care" merely suggestive rather than merely descriptive seems to us to ignore the common meaning of words and what people seeing them in context will make of them. We can think of no product that is "for the care of travel" or of any way anyone can care for travel; travel is not something one cares for with products. The statement makes little sense. A reader seeing "travel care" *in connection with products* is going to treat "travel care" adjectivally and assume it refers to *products*. "Travel care products" makes perfect sense: products a traveler takes along to care for something; products for the care of travel does not. To us, the evidence shows very clearly that "travel care"

*was* used by more than one company beside Franzus, and that company was Norelco. We simply cannot believe that the trade, after viewing all of Franzus' 135,000 advertising pieces talking about the category of travel care products and all of Norelco's Full Line Brochures featuring ten explicit categories of products including the TRAVEL CARE category and seeing the *Housewares* headline would not have at least a glimmering of an idea that TRAVEL CARE referred to a category. There was ample evidence it describes a category. "The trade" was comprised of Norelco's and Franzus' customers to whom they advertised. It does not matter in this case what *ultimate* purchasers did or did not know. In sum, these reasons given by the board for deciding that "travel care" had not been widely used as descriptive of a category, encompassing the products of Norelco's application and registration, not only totally lack persuasiveness but were clearly erroneous, considering the totality of the evidence.

With respect to the board's point that Franzus' descriptive use of "travel care," which the board expressly recognized, was a "third party" use and "just one of the factors" to consider, there is more to be said. Early on in its opinion, the board put Franzus into the "third party" category deliberately and then used that to effectively wipe out any significance in this case of the effect in the marketplace of the Franzus and other descriptive uses. To understand this, one must know what the board said in its footnote 4. After reciting the evidence of the relationship of Franzus to Remington Technology Incorporated, it said:

> Plaintiff [RPI] has not demonstrated that there is a *sufficient relationship* for us to conclude that the Franzus Company's actions have *inured to plaintiff's benefit,* and we will therefore treat the Franzus Company as a third party. [Our emphasis.]

The board did not again say anything about Franzus' uses not inuring to RPI's benefit or why it was significant that Franzus was a "third party," but by other roundabout reasoning succeeded in reducing the effect of those uses to zero, which is its major error of both logic and law.

Thinking about Franzus' uses *inuring to RPI's benefit* is inappropriate to the issue here. It is the kind of thinking one would pursue if RPI were trying to *register* a mark which Franzus had been using, in which case the relationship of RPI to Franzus would be vital. In the present situation, however, relationship is totally irrelevant. We discuss it only because the board seems to have given it weight. Franzus' acknowledged descriptive uses of "travel care" were simply introduced in evidence by RPI to show that "travel care," by reason of those uses, had become the descriptive designation of a *category* of products sold to travelers and therefore was not a trademark registrable to Norelco or anyone else, just as "power shop" in the *DeWalt* case had become unregistrable to DeWalt. RPI had no relationship whatever to *Housewares* magazine but its use of "travel care" in its headline was nevertheless further evidence that the term was used descriptively in the marketplace, not conclusive by itself, perhaps, but of definite evidentiary value. Norelco's own uses, for the most part, contribute to the same result.

It is very easy for marks consisting of common, simple English words having connotations related to the products on which they are used, their properties, or uses to slip out of their origin-indicating role into the vernacular as descriptive terms and once that happens the possibility of registration as trademarks under the Lanham Act vanishes. For another example beside *DeWalt,* and another precedent in this court, *see In re Thunderbird Products Corp.,* 406 F.2d 1389, 160 USPQ 730 (CCPA 1969) ("cathedral hull" refused registration for boats because term had entered into general usage to designate a type of boat hull). *See also* the classic "aspirin" case, *Bayer Co. v. United Drug Co.,* 272 F. 505 (S.D.N.Y.1921).

We have had some difficulty in trying to determine just why the board came to the conclusion that "travel care" should be registered. After discussing many different

points and shortly before its conclusion, the board came down with the bottom line that "travel care" is "the epitome of a suggestive mark" and therefore not "merely descriptive" under § 1052(e) of the statute. Were this an ex parte case involving an applicant to register presenting those alternatives of descriptiveness or suggestiveness without more, such reasoning would be proper and the board would have had to make a judgment on the issue, but this is not such a case. To decide on that basis is to sidestep the controlling question of fact here. That question is whether "travel care" has, in effect, gone into the public domain as a category of goods designation in the marketplace by reason of its extensive use as such. We think the evidence clearly shows that it has, by reason of the activities of Franzus and Norelco itself making this case like *DeWalt* and *Thunderbird* and requiring the same result which was reached in those cases and for substantially the same reasons. Whether, *before* that had happened, the mark or term had been merely suggestive or even a grade-A trademark makes no difference except that, of course, it is easier for a mark bordering on descriptiveness to become fully so. It takes less evidence to show that it has. This is such a case.

There is one point on which we fully agree with the board. It appears in footnote 6 of the board opinion and reads:

> The emphasis each party has given to the first use of "TRAVEL CARE" by defendant in terms of priority is not warranted. The issue here is descriptiveness ... and therefore priority of use is not an element in proving the case.

And there is a point in *DeWalt*, repeated in *Thunderbird*, which applies to this case, namely, that descriptiveness is determined in cases of this type "on the basis of the factual situation as of the time when registration is sought," meaning now.

We have found it unnecessary in this opinion to consider whether TRAVEL CARE is generic or descriptive and have used the terms more or less interchangeably though we are well aware of the distinction. *See In re Merrill Lynch,* 828 F.2d 1567, 1569, 4 USPQ2d 1141, 1142 (Fed. Cir.1987), where degrees of descriptiveness and the difficulty of drawing sharp lines between them are discussed. As stated above, the board opined that Franzus had used the term "in a generic manner" and we have termed it "descriptive." Of course, a "merely descriptive" term may be a trademark when a "secondary meaning" for it has been proved. In this case, however, that problem was eliminated at the start. An interrogatory was submitted to Philips asking: "Does Applicant contend that the term TRAVEL CARE has acquired a secondary meaning?" The answer was an unqualified "No."

For the foregoing reasons, the decisions of the board dismissing the opposition and cancellation are *reversed.*

REVERSED.