60 F.3d 1565
 35 U.S.P.Q.2d 1554
 BELLSOUTH CORPORATION, Appellant,
v.
DATANATIONAL CORPORATION; Association of North America
Directory Publishers; Reuben H. Donnelley Corporation;
Donnelley Information Publishing, Inc.; US West, Inc. and
Christian Publishing & Services, Inc.; Multi-Local Media
Corporation; Cellular Directory Corporation; Contel
Corporation; George Edward Brumley, d/b/a The George
Brumley Company; Scott Wilcox, d/b/a Telco Directory
Publishing; Telcom Directories, Inc.; North American
Directories, Inc.; GTE Directories Corporation; Yellow
Pages--Nationwide Edition Directory, Inc. and U.S. Printing
Directory, Inc.; United Telecommunications, Inc.; Carolina
Telephone and Telegraph Co.; United Intermountain Telephone
Company; United Telephone Company of The Carolinas; United
Telephone Company of Florida; Directoriesamerica, Inc.;
Community Telephone Directories, Inc.; National Suburban
Directories, Inc., Appellees.
 No. 91-1461.
 United States Court of Appeals,
Federal Circuit.
 July 26, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Sept. 29, 1995.
 
 Anthony B. Askew, Jones, Askew & Lunsford, Atlanta, GA, argued for appellant. With him on the brief was Stephen M. Schaetzel. Also on the brief were Sandra J. Evans, Bellsouth Corp., Atlanta, GA and Vincent L. Sgrosso, Bellsouth Advertising & Pub. Corp., Atlanta, GA, of counsel.
 Baila H. Celedonia, Cowan, Liebnowitz & Latman, P.C., of New York City, argued for appellees. Also on the brief were Paul F. Kilmer, Gadsby & Hannah, of Washington, DC, Howard B. Weinreich, Volt Information Sciences, Inc., New York City, Josephine Lea Iselin, Lankenau & Bickford, New York City, Lawrence E. Abelman and Nancy J. Mertzel, Abelman, Frayne, Rezac & Schwab, New York City, Kevin G. Smith, Kimmel, Crowell & Weaver, of Arlington, VA, and Robert D. Hovey, Hovey, Williams, Timmons & Collins, Kansas City, MO.
 Before ARCHER, Chief Judge,* RICH, and MAYER, Circuit Judges.
 Opinion for the court filed by Chief Judge ARCHER. Circuit Judge MAYER dissents without opinion.
 ARCHER, Chief Judge.
 
 
 1
 BellSouth Corporation (BellSouth) appeals from a decision of the Trademark Trial and Appeal Board (board) of the Patent and Trademark Office (PTO) sustaining the opposition of DataNational Corporation and twenty-three other opposers (opposers) on summary judgment and refusing BellSouth's concurrent use registration of a "Walking Fingers" logo as a design mark for classified telephone directories. We affirm.
 
 I.
 
 2
 In the early 1960's, American Telephone & Telegraph Company (AT & T) and its subsidiary regional operating companies that made up the Bell System began using the slogan "Let Your Fingers Do The Walking" with the "Walking Fingers" logo on their classified telephone directories. The regional Bell System operating companies published telephone directories covering their respective geographic regions. The companies sold advertising space in the commercial listings or "Yellow Pages" portion of the directories and gave the directories to their customers without charge. The slogan and logo were the subject of a nation-wide advertising campaign.
 
 
 3
 The "Walking Fingers" logo has undergone changes since its introduction but the conventional one at issue here was first introduced in the early 1970's.
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 5
 Although the logo is undoubtedly familiar to many, AT & T never filed a trademark registration application for this most famous version of the "Walking Fingers" logo. In fact, the record is quite clear that AT & T never treated the logo as a trademark at all. Instead, prior to the divestiture of BellSouth in 1984, AT & T allowed any and all competing publishers of telephone directories to use the logo on their own directories.
 
 
 6
 AT & T and its operating companies were not the only publishers of telephone directories prior to their divestiture by AT & T. Independent (i.e., non-Bell) telephone companies and directory publishers also published telephone directories and sold advertising space in commercial listings. AT & T freely allowed these different source publishers to use the logo. The record is clear that AT & T consciously chose not to enforce any proprietary rights it might have had in the "Walking Fingers" logo at issue.[1] The "Walking Fingers" logo has since been adopted and used by most companies who publish classified telephone directories.
 
 II.
 
 7
 BellSouth was formed in 1984 as a result by the divestiture of AT & T. BellSouth is the holding company for two of the twenty-two former Bell System operating companies, Southern Bell and South Central Bell. Southern Bell and South Central Bell are certified to provide wireline telecommunications service in certain areas of the states of North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Tennessee, and Kentucky, and the Commonwealth of Puerto Rico.
 
 
 8
 In 1985, BellSouth applied for a concurrent use registration for the "Walking Fingers" design mark for classified telephone directories. BellSouth requested a registration that covered the certificated areas in the nine states in which its subsidiaries operate. It identified eight excepted users of the mark outside the claimed geographic area, consisting of the six regional holding companies created as a result of the divestiture and two former Bell System operating companies that survived the divestiture (the "Baby Bells").
 
 
 9
 Twelve different oppositions by twenty-four different opposers were filed in response to BellSouth's application. Opposers moved for summary judgment on several grounds, including that the mark had become a generic designation for information directories. Opposers filed affidavits and evidence in support of the motion. Among this evidence was trade association data showing that of the 6,200 classified telephone directories published in the 1988-89 time frame, approximately 5900 used the "Walking Fingers" logo on the front cover and another 300 use the mark somewhere in or on their directories. The evidence demonstrated that the publishers of the directories included the Baby Bells, independent telephone companies, and independent publishers not affiliated with a phone company, and that many of these publishers had been using the mark since the late 1970s. The classified areas were often overlapping. Other evidence filed demonstrated that excepted users Bell Atlantic Corporation and U.S. West, Incorporated, consider the logo to be in the public domain, free for any publisher's use. In response, BellSouth provided consumer surveys showing that many customers in its service area identified the logo with BellSouth, not with classified directories generally.
 
 
 10
 In light of this evidence, the board granted summary judgment denying registration, agreeing with the opposers that the mark had become a generic indicator of the yellow pages without regard to any particular source. In its decision, the board assumed arguendo that the logo could operate as a trademark in the "claimed territory" in the nine state region[2] where BellSouth operated and focused its analysis on the rest of the country, the "nonterritory." After reviewing the evidence proffered in support of and opposing the summary judgment motion, the board noted that "[t]here is no genuine issue of fact that many different entities have used and continue to use the walking fingers logo on classified telephone directories, and that directories bearing the logo and originating with different entities have been distributed throughout the United States," that "there is no genuine issue of fact that independent telephone companies and independent telephone directory publishing companies have been using the walking fingers logo on their classified telephone directories for many years," and that "there is no genuine issue that other Baby Bells or their operating companies have treated the walking fingers logo as being free for any company to use to identify its directory as containing yellow pages." The board concluded that the logo was generic as to the nonterritory and that, as a matter of law, it followed that BellSouth's registration for the claimed territory within the nine state geographic area must be denied. The board held:
 
 
 11
 Because of the myriad uses of the logo by many different publishers for virtually all directories disseminated in the nonterritory, we find as a matter of law that in the nonterritory the logo fails to function and cannot function as a trademark which identifies and distinguishes the source of the classified directories. That is, because the public is accustomed to seeing the walking fingers logo on all classified telephone directories, wherever it may encounter them, it will not regard the logo as a trademark but merely as an informational symbol which denotes yellow pages.
 
 
 12
 In its reconsideration decision affirming its earlier decision, the board clarified its position on concurrent use proceedings. The board stated that:
 
 
 13
 concurrent use registrations are appropriate where a term or logo is used in a proprietary manner by more than one party, and each party uses the term as its trademark in separate parts of the United States in circumstances where those trademark uses are not likely to cause confusion. A concurrent use registration, however, is not appropriate where the uses in the unclaimed territory (the nonterritory) are generic uses.
 
 
 14
 BellSouth appeals the decision of the board on the grounds (1) that the board committed factual and legal error in concluding the logo was generic in the nonterritory and (2) that assuming arguendo that the logo is generic in the nonterritory, this does not foreclose a concurrent use registration for the territory claimed by BellSouth.
 
 III.
 
 15
 In reviewing the board's grant of summary judgment, we apply the same standard as the board, the standard of Federal Rule of Civil Procedure 56. Institut National Des Appellations D'Origine v. Vintners Int'l Co., 958 F.2d 1574, 1579, 22 USPQ2d 1190, 1194 (Fed.Cir.1992). Under Rule 56, summary judgment is appropriate if the pleadings and evidence of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.
 
 
 16
 BellSouth applied for a trademark registration for the "Walking Fingers" logo on the principal register under Section 1 of the Lanham Act. 15 U.S.C. Sec. 1051. Specifically, BellSouth sought a concurrent registration,[3] recognizing there are other lawful users of the logo in different geographical regions but contending its own use in the claimed territory of the nine state area it services is exclusive and not likely to cause confusion. Section 2(d) of the Lanham Act permits registration of a mark for concurrent use to an applicant (1) who has become entitled to use the mark as a result of his concurrent lawful use of the mark in commerce and (2) where there is no likelihood of confusion for the same or similar marks of two or more parties as a result of the territorial distinctions of the place of use of the goods or services. 15 U.S.C. Sec. 1052(d).
 
 
 17
 An application for concurrent use registration is examined by the PTO under the same standards as those of other trademark registration applications. 37 C.F.R. Sec. 2.99(a). A generic term cannot be registered as a trademark because such a term cannot function as an indication of source. In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1569, 4 USPQ2d 1141, 1142 (Fed.Cir.1987). The primary function of a trademark is to identify and distinguish the goods or services of one source from those sold by all others, although this may be accomplished anonymously. 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition Sec. 12.01 (3d ed. 1992). A generic term, by contrast, describes a product generally, and cannot inform the public that the product has a particular source. Id.; Merrill Lynch, 828 F.2d at 1569, 4 USPQ2d at 1142 ("Generic terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status."). The Lanham Act precludes registration on the principal register of a mark that "when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them." 15 U.S.C. Sec. 1052(e)(1). A generic term falls within this prohibition because "[t]he generic name of a thing is in fact the ultimate in descriptiveness." H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc., 782 F.2d 987, 989, 228 USPQ 528, 530 (Fed.Cir.1986).
 
 
 18
 The board found that there was no genuine issue of fact that the "Walking Fingers" logo was generic in the nonterritory. A descriptive term may be generic for a designation ab initio, see In re Northland Aluminum Products, Inc., 777 F.2d 1556, 1558-59, 227 USPQ 961, 962-63 (Fed.Cir.1985), or it may become generic over time through common usage if the otherwise nondescriptive term is not policed as a trademark and it is commonly used to describe a type of product, see Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 100, 10 USPQ2d 1748, 1752 (2d Cir.1989). In this case, the board found the "Walking Fingers" logo to be in the latter category, at least in the nonterritory. While the "Walking Fingers" logo may once have been a strong candidate for trademark protection, through common usage by virtually all classified directory publishers it can no longer be understood to represent a source of the directories. Instead, as the board determined based on the evidence in support of the summary judgment motion, the logo at least in the nonterritory now identifies the product--classified telephone directories--generally.
 
 
 19
 This case is somewhat unusual because of the unique circumstances surrounding the phone giant AT & T and its subsequent divestiture of operating companies. Opposers, however, clearly demonstrated that AT & T did not protect the logo prior to divestiture but rather allowed all other publishers to use the logo. AT & T's policy regarding the logo resulted in near universal use of the logo prior to and at the time BellSouth acquired separate rights to portions of AT & T's business and assets in the divestiture and sought to register the "Walking Fingers" logo as a trademark. The opposers' evidence shows that at this time the use by other publishers was widespread and frequently in overlapping territories. From the totality of this uncontested evidence it is clear that the board properly concluded that the "Walking Fingers" logo was in the public domain for the identified designation at the time of BellSouth's application. BellSouth therefore cannot claim succession to any trademark use by its predecessor company, AT & T.
 
 
 20
 BellSouth argues that the board erred in using a "myriad of users" test rather than a "purchasers' understanding" test. The Lanham Act provides that "[t]he primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. Sec. 1064(3) (in the context of a petition to cancel a registration). We have explained that the purpose of this language was to overrule cases that purported to create a new test for genericness that focused on a purchasers' motivation rather than understanding. Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 640, 19 USPQ2d 1551, 1553 (Fed.Cir.1991); see In re D.C. Comics, Inc., 689 F.2d 1042, 1054, 215 USPQ 394, 404 (CCPA1982) (Nies, J., specially concurring) ("The reason the public is motivated to buy the product ... is of concern to market researchers but is legally immaterial to the issue of whether a particular designation is generic.").
 
 
 21
 We are convinced that the board's decision is consistent with the statutory test. The board was of the view that where there is near universal use of a logo in a given field for the identical goods, this is strong (albeit circumstantial) evidence that purchasers would not be able to differentiate between competing sources by viewing such a logo. The cases have recognized that competitor use is evidence of genericness. See, e.g., Remington Products, Inc. v. North American Philips Corp., 892 F.2d 1576, 1578, 13 USPQ2d 1444, 1446 (Fed.Cir.1990) (testimony of competitor's president of generic use by competitor); see also 1 McCarthy, supra, at Sec. 12.02[b]. The board did not rely solely on competitor use in arriving at its decision that the "Walking Fingers" logo became generic. It also stated that because of the widespread use the public "will not regard the logo as a trademark but merely as an informational symbol which denotes yellow pages." While consumer surveys may be a preferred method of proving genericness under the proper test of purchaser understanding, we are satisfied that on the facts of this case genericness has been established under that test.
 
 
 22
 Finally, BellSouth argues that the evidence it presented in opposition to the motion for summary judgment raised a genuine issue of fact regarding whether the logo is generic in the nonterritory. BellSouth points to (1) its survey evidence showing that purchasers in its nine state service area associate the logo with BellSouth; (2) excepted user and opposer Ameritech Publishing, Inc.'s claim to concurrent use trademark rights in the logo;[4] (3) opposer North American Directories, Inc's (North American) attempt to register the logo as a state trademark; and (4) the existence of the two fingered "Walking Fingers" concurrent use trademark held by the Baby Bells.
 
 
 23
 The survey evidence might raise a genuine fact issue were the surveys not limited to BellSouth's claimed territory. BellSouth argues that because the logo may operate as a trademark in its service areas, it may also be operating as a trademark in the nonterritory. This argument has merit in the abstract, but when measured against the uncontested evidence of genericness in the nonterritory proffered by opposers in support of summary judgment, we are convinced this indirect evidence cannot raise a genuine issue of material fact even when considered in a light most favorable to BellSouth.
 
 
 24
 Likewise, BellSouth's evidence showing that others would like to register the logo as a trademark is not sufficient to raise a genuine issue on the question of whether the logo is generic. Moreover, we find unpersuasive BellSouth's argument that because it was able to register a similar mark (the two fingered version of the "Walking Fingers"), it should be able to register a mark that has become generic and that nearly everyone in the industry is using in the nonterritory.
 
 IV.
 
 25
 We agree with the board's conclusion that because the mark is generic in the nonterritory as a matter of law the logo is not entitled to registration under the concurrent use provisions of the Lanham Act for the claimed territory. The Lanham Act provides that "if the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks ... concurrent registrations may be issued...." 15 U.S.C. Sec. 1052(d). The term "use" plainly means use as a trademark. Thus the statute by its terms is applicable where there is more than one lawful user of the same or similar mark. Here, the record establishes that there is no other lawful user of the logo as a trademark because it has become generic in the nonterritory.
 
 
 26
 A term shown to have generic significance to the public in the nonterritory cannot be registered as a trademark with the PTO notwithstanding the concurrent use provisions of the Lanham Act. Applicants seeking the benefits of federal registration for their alleged trademark cannot divide up the country piecemeal into those regions where the mark is generic and those regions where it is not. An applicant for trademark registration may under the concurrent use provisions claim less than the entire country as the place of use but only when there is either an actual or potential concurrent use of the mark by another lawful user that is not likely to cause confusion among purchasers. That cannot be the case where, as here, the alleged mark is in the public domain and thus unable to achieve trademark status in the areas of the country not claimed by the applicant.
 
 
 27
 "Rights appurtenant to the ownership of a federal trademark registration ... may be considered supplemental to those recognized at common law, stemming from ownership of a trademark." In re Beatrice Foods Co., 429 F.2d 466, 472, 166 USPQ 431, 435 (CCPA1970). Irrespective of what other rights BellSouth may have in the "Walking Fingers" logo, we must conclude in this case that the Lanham Act does not provide a basis for the registration of that logo.
 
 CONCLUSION
 
 28
 The board properly found on summary judgment that the "Walking Fingers" logo was a generic identifier of classified telephone directories in that part of the country not claimed by BellSouth. BellSouth's evidence submitted in rebuttal of the opposers' evidence failed to raise a genuine issue of material fact. After finding the logo generic in the nonterritory, the board properly concluded that the logo could not be registered as a trademark in the small nine state area that BellSouth serviced.
 
 AFFIRMED
 
 29
 MAYER, Circuit Judge, dissents.
 
 
 
 *
 Chief Judge Archer assumed the position of Chief Judge on March 18, 1994
 
 
 [1]
 In 1978, AT & T filed a trademark registration application for a two fingered version of the "Walking Fingers" mark. This version is different from the one at issue that is used by most of the industry. The two fingered version of the mark was registered in 1980 and BellSouth is one of the assignees of it
 
 
 [2]
 The "claimed territory" is not the nine states themselves, but only those certificated areas in the nine states where BellSouth is certified to provide wireline service. The board recognized that over 200 other independent companies operate in the same nine state region but that their certificated areas are not included in the claimed territory
 
 
 [3]
 The board's decision was expressly limited to the availability of concurrent use registration for applicant and no consideration was given to whether applicant has other bases for protection of the logo in the areas of claimed use. We similarly consider only that issue
 
 
 [4]
 Ameritech's opposition was not consolidated by the board with the other opposers and Ameritech is not a party to this appeal