Paper No. 10
EWH/ak

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTTAB       OCT. 20, 98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Shiva Corporation
_____

Serial No. 75/001,460
_____

Elaine A. Martel for Shiva Corporation

Peter Cataldo, Trademark Examining Attorney, Law Office 103
(Michael Szoke, Managing Attorney)
_____

Before Seeherman, Hanak and Hohein, Administrative
Trademark Judges.

Opinion by Hanak, Administrative Trademark Judge:


    Shiva Corporation (applicant) seeks registration of

TARIFF MANAGEMENT in typed capital letters for "computer

hardware and computer programs to control, reduce and

render more efficient wide area network (WAN) usage and

printed user manuals sold therewith."  The intent-to-use

application was filed on October 4, 1995.

The Examining Attorney refused registration pursuant to Section 2(e)(1) of the Lanham Trademark Act on the basis that applicant's mark is merely descriptive of applicant's goods.

When the refusal was made final, applicant appealed to this Board.  Applicant and the Examining Attorney filed briefs.  Applicant did not request a hearing.

In support of his refusal, the Examining Attorney has made of record excerpts from over 25 articles taken from the NEXIS database wherein the phrase "tariff management" appears.  These stories demonstrate that the term "tariff management" refers to computers and computer programs which reduce the cost of telephone charges when it is necessary to use a wide area network (WAN).  For example, an excerpt from the March 1, 1996 issue of IAC Newsletter states as follows:  "The program includes new SHIVAINTEGRATOR and SHIVAPORT products that implement tariff management for minimizing telephone charges over WAN links."  Another excerpt from the May 1994 issue of Data Communications contains the following sentence:  "The SPIDERINTEGRATOR'S tariff management features can help companies curb wide-area transmission costs."

It is applicant's position "that the Examining Attorney's NEXIS evidence is not as persuasive as it might

first appear." (Applicant's brief page 4). Applicant notes that the vast majority of the NEXIS stories refer to applicant's goods or the goods of applicant's subsidiary. Continuing, applicant acknowledges that "while it is true that TARIFF MANAGEMENT is not consistently used in a proper trademark manner in the stories, it is submitted that this is the fault of the writers of the articles and not of applicant." (Id.).

We simply do not share applicant's view. To begin with, not one of the NEXIS stories uses the term "tariff management" in a trademark manner. Rather, in the stories the term "tariff management" describes a feature of a computer or computer program that allows a company to minimize its telephone charges by selecting the least expensive carrier. As the excerpt from the April 1, 1996 issue of IAC Industry Express makes clear, "tariff management" is simply a means for "reducing phone bills." Stated somewhat differently, none of the NEXIS stories suggests in any way whatsoever that the term "tariff management" acts as a source identifier (trademark) indicating computer hardware and computer programs originating solely from applicant. This is not a situation where on occasion authors have inadvertently set forth a trademark in all lower case letters, as opposed to all

3

upper case letters or initial capital letters.  Indeed, a careful review of the NEXIS excerpts reveals that what appear to be applicant's true proprietary terms (trademarks) -- such as SHIVAINTEGRATOR, SHIVAPORT, SPIDERINTEGRATOR and SPIDERPORT -- are universally depicted in a proper trademark manner with initial capital letters.

Finally, we note that applicant has devoted the majority of its brief to individual considerations of, on the one hand, the word "tariff" and, on the other hand, the word "management."  Applicant argues that "the word 'management' is as amorphous as 'tariff' is precise; it generally means the control or organization of something. The phrase TARIFF MANAGEMENT may suggest something about the nature of applicant's goods in terms of the general concepts of cost-saving and efficiency, but it certainly does not describe the goods." (Applicant's brief page 2).

Had the aforementioned NEXIS evidence not been made of record, then we would have had to consider the individual words "tariff" and "management" to determine whether their combination resulted in a phrase which forthwith conveyed information regarding applicant's "computer hardware and computer programs to control, reduce and render more efficient wide area network (WAN) usage and printed user manuals sold therewith."  However, because the NEXIS

4

evidence clearly demonstrates that the phrase "tariff management" has been frequently used to identify a key feature or function of the computer hardware and computer programs set forth in applicant's application, we simply need not dwell on considering the individual meanings of the words "tariff" and "management."  See In re Thunderbird Products Corp., 406 F.2d 1389, 160 USPQ 730, 731 (CCPA 1969) (The term "cathedral hull" was held descriptive of a type of boat based not upon the "usual … connotations of the word ['cathedral']," but rather upon the fact that the term "cathedral hull" as a whole had "entered general usage to designate a particular type within the class of goods for which registration [was] sought."); Remington Products v. North American Philips, 892 F.2d 1576, 13 USPQ2d 1444 (Fed. Cir. 1990) (The term "travel care" was held to be at least descriptive based not upon a consideration of the meanings of the individual words "travel" and "care," but rather upon the fact that the term "travel care" as a whole had been used in a descriptive or perhaps generic manner.); In re Digital Research Inc., 4 USPQ2d 1242, 1244 (TTAB 1987) (Literal dictionary definition of the word "concurrent" was irrelevant to a consideration of whether the "mark" CONCURRENT PC-DOS was descriptive of computer programs given the fact that there was significant NEXIS

evidence showing the descriptive use of the entire term "Concurrent PC-DOS").

In conclusion, when there is evidence that two or more words have been used together to form a phrase or term that forthwith conveys information regarding the goods or services set forth in the application, it is simply not necessary to engage in an analysis of each of the individual words in an effort to ascertain whether, when used together, said words forthwith convey information concerning the goods or services set forth in the application.

DECISION:  The refusal to register is affirmed.

E. J. Seeherman

E. W. Hanak

G. D. Hohein
Administrative Trademark
Judges, Trademark Trial
And Appeal Board