THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: August 18, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Apollo Medical Extrusion Technologies, Inc.*
*v.*
*Medical Extrusion Technologies, Inc.*

_____

Opposition No. 91219435

_____

Kirk M. Hallam, Esq. and Nicholas J. Hoffman, Esq.
   for Apollo Medical Extrusion Technologies, Inc.

Dirck J. Edge, Esq.
   for Medical Extrusion Technologies, Inc.

_____

Before Quinn, Ritchie, and Shaw,
   Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Medical Extrusion Technologies, Inc. ("Applicant") filed an application to register on the Principal Register the mark MEDICAL EXTRUSION TECHNOLOGIES (in standard characters) for "polyurethanes in the form of sheets, films, pellets, granules, and tubes for use in the manufacture of medical devices, medical diagnostic devices, artificial vascular grafts, stents, pacemaker leads, artificial heart pump diaphragms, catheters, drug delivery devices, orthopedic and spinal implants, blood glucose

monitors, and blood gas analyzers" in International Class 17.[1] The application includes a claim of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f).

Apollo Medical Extrusion Technologies, Inc. ("Opposer") opposed registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that Applicant's mark, as used in connection with Applicant's goods, is merely descriptive thereof. Further, Opposer claims that inasmuch as Applicant's proposed mark is highly descriptive, and that use of it has not been substantially exclusive, the Section 2(f) claim of acquired distinctiveness fails.

Applicant, in its answer, denied the salient allegations of the notice of opposition.[2]

**Evidentiary Objections**

Opposer took the testimony of Gregg Hallam, Opposer's vice president of manufacturing.[3] 9 TTABVUE. Applicant objected to this deposition as improper rebuttal testimony, contending that the testimony should have been presented during Opposer's case-in-chief. Applicant also moved to strike the exhibits accompanying Opposer's notice of reliance. 14 TTABVUE. In support of the objections, Mr. Edge, Applicant's counsel, submitted his declaration and related exhibits. The Board, in an

---

[1] Application Serial No. 85925459, filed May 7, 2013 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging first use and first use in commerce on September 6, 1990.

[2] Applicant also set forth affirmative defenses. However, Applicant did not pursue them at trial or in its brief. The defenses are therefore deemed waived. *Daniel J. Quirk, Inc. v. Vill. Car Co.*, 120 USPQ2d 1146, 1147 n.4 (TTAB 2016).

[3] Gregg Hallam is the brother of Opposer's attorney, Kirk Hallam. 9 TTABVUE 33. We make this observation to avoid any confusion when we refer to Gregg Hallam's testimony *infra.*

order dated May 12, 2016, deferred consideration of the evidentiary objections until final hearing. 17 TTABVUE.

By way of background, we note that the Board held a telephone conference with the parties on October 26, 2015, memorializing the conference in an order on October 27, 2015. Opposer did not serve pretrial disclosures due to counsel's oversight, and then on October 23, 2015, noticed two testimony depositions (including one of Mr. Hallam) to be taken on October 27, 2015, the last day of Opposer's testimony period. During the conference, and apparently as a result of the parties' agreement in lieu of extending the trial dates, "Opposer withdrew the notices of testimony deposition at issue and indicated that it intended to file prior to the close of its testimony period a notice of reliance in which it makes of record documents that it planned to make of record by way of the testimony depositions. Accordingly, Opposer's testimony depositions noticed for October 27, 2015 shall not go forward." 5 TTABVUE 2.

We first turn to the notice of reliance. 6 TTABVUE. Applicant argues that although Internet evidence may be introduced in a notice of reliance, Opposer did not specify the relevance of each exhibit, but only generally indicated the relevance of the documents as a whole. Applicant asserts that this evidence, in any event, has little probative value, and is admissible only to show what has been printed, not the truth of what has been printed.

The objection is not well taken. First, as Applicant seems to acknowledge, Internet evidence is proper subject matter for introduction by way of a notice of reliance. (Exhibits 1-20). Trademark Rule 2.122(e)(2). And Exhibit 21 is taken from

a printed publication, also proper subject matter of a notice of reliance. Trademark Rule 2.122(e)(1). Second, Applicant did not timely make its objection:

> [t]he failure to properly "indicate generally the relevance of the material being offered" . . . is an evidentiary defect that can be cured by the propounding party as soon as it is raised by any adverse party, without reopening the testimony period of the propounding party. If the adverse party believes that the propounding party has not met the requirement to "indicate generally the relevance of the material being offered," the adverse party must lodge an objection before the opening of the next testimony period following that in which the material was offered into the record, or risk a finding that any objection on this basis has been waived.

*Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1040 (TTAB 2010). *See FUJIFILM SonoSite, Inc. v. Sonoscape Co.*, 111 USPQ2d 1234, 1237 (TTAB 2014); Trademark Rule 2.122(g).[4] *See generally* TBMP § 707.02(b) (June 2017). Thus, Applicant's objection is waived. Further, and perhaps most importantly, Opposer did, in fact, refer to the general relevance of the documents as follows: "relevant to the ***highly*** descriptive nature of 'medical extrusion technologies'; the complete lack of exclusive use by Applicant in the five years prior to its claim of acquired distinctiveness; the nature of Applicant's application, as well as the channels of trade and customers for Applicant's goods and/or services." (emphasis in original). 6 TTABVUE 5. This

---

[4] Rule 2.122(g), which codifies the holdings of *Safer* and *FUJIFILM*, was added to the Trademark Rules of Practice effective January 14, 2017. In the Notice of Final Rulemaking, the Board explained: "In an effort to curtail motion practice on this point, the rule explicitly states any failure of a notice of reliance to meet this requirement will be considered a curable procedural defect." 81 Fed. Reg. 69950, 69952 (Oct. 7, 2016).

statement of relevance is acceptable, and Applicant's admissibility objection is overruled.

Even though Applicant has questioned the probative value of this evidence, "[u]ltimately, the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence, including any inherent limitations, and this precludes the need to strike the testimony and evidence." *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1737 (TTAB 2014). Accordingly, we have considered all of the items listed in Opposer's notice of reliance, and have accorded each of them whatever probative value is appropriate.

Applicant also objected to the Hallam deposition as improper rebuttal testimony. Applicant raised its objection at the deposition, 9 TTABVUE 8-9, and reiterated the objection when it filed its brief on the case. Applicant contends that Opposer was precluded from taking any trial testimony during its case-in-chief due to the lack of pre-trial disclosures, and that Opposer has attempted to circumvent this situation by taking the rebuttal testimony deposition of Mr. Hallam that was originally noticed as a case-in-chief deposition. The original notice described the topics of his anticipated testimony as follows:

> [T]he mere descriptiveness and lack of secondary meaning of the term "medical extrusions technology," [the] deponent's interactions and communications with third parties relating to the term "medical extrusions technology," packaging and marketing materials including "medical extrusions technology," and Opposer's history.
> 15 TTABVUE 6

Opposer's notice to take the rebuttal testimony of Mr. Hallam described the topics as follows: "the lack of exclusive use of the term 'medical extrusions technologies' and lack of secondary meaning by Applicant." 15 TTABVUE 9.

Opposer claims that Applicant failed to cite any specific testimony that is improper, but rather based its objection on "the unremarkable fact that Opposer originally intended to depose Mr. Hallam during its case-in-chief before withdrawing that deposition." 18 TTABVUE 10-11. Opposer maintains that Mr. Hallam's testimony is entirely proper as rebuttal to deny, explain or discredit certain facts introduced by Applicant's witnesses.

The function of rebuttal evidence is "'to explain, repel, counteract, or disprove the evidence of the adverse party.'" *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 116 USPQ2d 1869, 1883 (Fed. Cir. 2015) (citing Victor Gold, 28 Fed. Prac. & Proc. Evid. § 6164 (2d ed. 2015)). *See ProMark Brands, Inc. and H.J. Heinz Co. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1239 (TTAB 2015). We find that Mr. Hallam's testimony rebuts certain testimony and evidence introduced by Applicant in connection with the degree of descriptiveness and the claim of acquired distinctiveness. *See Data Packaging Corp. v. Morning Star, Inc.*, 212 USPQ 109, 113 (TTAB 1981) ("The fact that evidence might have been offered in chief does not preclude its admission as rebuttal."). It is not that unusual to have a witness noticed for both case-in-chief and rebuttal testimony, even if, as in this case, the deposition was only taken on rebuttal. Accordingly, Mr. Hallam's testimony constitutes proper rebuttal and the objection to

the deposition is overruled.[5] We have considered the rebuttal testimony in our determination of the merits of the opposition.

**The Record and Briefs**

The record consists of the pleadings; trial testimony, with related exhibits, taken by each party; and dictionary definitions, excerpts of third-party websites, a book excerpt, and articles retrieved from the Internet, all introduced by way of Opposer's notice of reliance.[6] The parties filed briefs. Although Opposer originally requested an oral hearing, the request subsequently was deemed waived, and the case was submitted on brief.

**Standing**

"The facts regarding standing . . . are part of [a plaintiff's] case and must be affirmatively proved. Accordingly, [plaintiff] is not entitled to standing solely because of the allegations in its petition." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). To prove its standing to oppose the registration of allegedly merely descriptive wording that has not acquired distinctiveness, an opposer may show it is engaged in the manufacture or sale of the same or related goods or services as those listed in the applicant's application; that

---

[5] Even had we concluded that Mr. Hallam's testimony constituted more than rebuttal, we point out that the Board may exercise its discretion to consider improper rebuttal evidence, particularly when an objecting party fails to demonstrate that the evidence raises new or surprising issues or any prejudice resulting from the failure. *Cf. Snyder v. Dep't of the Navy*, 854 F.3d 1366, 1376 (Fed. Cir. 2017) (admission of allegedly improper rebuttal evidence falls within the sound discretion of the Merit Systems Board when objecting party fails to demonstrate prejudice).

[6] Opposer describes the record in detail in its brief, and Applicant concurs with this description. 8 TTABVUE 8-12; 16 TTABVUE 5.

is, that the opposer has the right to use the wording in a merely descriptive manner. *Anheuser-Busch Inv. v. Holt*, 92 USPQ2d 1101, 1103 (TTAB 2009); *Plyboo Am., Inc. v. Smith & Fong Co.*, 51 USPQ2d 1633 (TTAB 1999); *Nature's Way v. Nature's Herbs*, 9 USPQ2d 2077, 2080 (TTAB 1989); *Binney & Smith Inc. v. Magic Marker Indus., Inc.*, 222 USPQ 1003, 1010 (TTAB 1984). Applicant does not contest Opposer's standing. Furthermore, the evidence of record shows that Opposer is a competitor and is engaged in providing contract extrusion services for the medical industry. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (citing *Ritchie v. Simpson*, 170 F.2d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999)), *cert. denied*, 135 S. Ct. 1401 (2015). Lest there be any doubt, Opposer received a cease and desist letter from Applicant. 4 TTABVUE 3 (Answer, ¶10); 12 TTABVUE 90-92. *See Miller v. Miller*, 105 USPQ2d 1615, 1619 (TTAB 2013). ("These cease and desist letters provide additional evidence that opposer has business interests that have been affected, i.e., a real interest in the proceeding, and thus, has standing.").

Opposer has established its standing.

**The Law**

Section 2(e)(1) provides that a mark is unregistrable on the Principal Register if, "when used on or in connection with the goods of the applicant [it] is merely descriptive or deceptively misdescriptive of them … ."

Pursuant to Section 2(f), matter that is merely descriptive under Section 2(e)(1) may nonetheless be registered on the Principal Register if it "has become distinctive

of the applicant's goods [or services] in commerce." Thus, the mark may be registered on the Principal Register if the applicant proves that the merely descriptive matter has acquired distinctiveness (also known as "secondary meaning") as used on the applicant's goods and/or services in commerce. *See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1728-30 (Fed. Cir. 2012). Acquired distinctiveness is generally understood to mean an acquired "mental association in buyers' minds between the alleged mark and a single source of the product." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15:5 (4th ed., June 2017 Update).

An applicant seeking registration of a mark under Section 2(f) bears the ultimate burden of establishing acquired distinctiveness. *See Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988). Applicant's burden is to prove acquired distinctiveness by a preponderance of the evidence. *Id.* at 1006 "Finally, the applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning." *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1424 (Fed. Cir. 2005). As the Board has explained:

> [T]he greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish acquired distinctiveness. The sufficiency of the evidence offered to prove acquired distinctiveness should be evaluated in light of the nature of the designation. Highly descriptive terms, for example, are less likely to be perceived as trademarks and more likely to be useful to competing sellers than are less descriptive terms. More substantial evidence of acquired distinctiveness thus will ordinarily be required to

9

> establish that such terms truly function as source-indicators.

*In re Greenliant Sys. Ltd.*, 97 USPQ2d 1078, 1085 (TTAB 2010) (internal citations omitted). *See In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 116 USPQ2d 1262, 1265 (Fed. Cir. 2015) (Board has discretion not to accept an applicant's allegation of five years of substantially exclusive and continuous use as prima facie evidence of acquired distinctiveness when the proposed mark is "highly descriptive"); *In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056, 1058 (Fed. Cir. 1999) ("[C]onsidering the highly descriptive nature of the proposed mark, [Applicant] has not met its burden to show that the proposed mark has acquired secondary meaning.").

**Degree of Descriptiveness**

The initial question before us in our analysis of whether MEDICAL EXTRUSION TECHNOLOGIES has acquired distinctiveness is the degree of descriptiveness of that phrase as used in connection with Applicant's goods. *See Nazon v. Ghiorse*, 119 USPQ2d 1178, 1187 (TTAB 2016). As noted above, the higher the degree of descriptiveness of the designation in question, the higher the burden Applicant faces in proving acquired distinctiveness.

A designation is considered to be merely descriptive under Section 2(e)(1) if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used. *See In re Chamber of Commerce of the United States of America*, 675 F.3d 1297, 102 USPQ2d 1217 (Fed. Cir. 2012). The wording need not immediately convey an idea of each and every specific feature of the applicant's goods in order to be considered merely descriptive; it is enough that the

terminology describes one significant attribute or function of the goods. *See In re H.U.D.D.L.E.*, 216 USPQ 358, 359 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338, 339 (TTAB 1973).

Contrary to the gist of one of Applicant's main arguments, by seeking registration of its proposed mark MEDICAL EXTRUSION TECHNOLOGIES pursuant to Section 2(f), Applicant has conceded that this wording is, at the least, merely descriptive of its goods under Section 2(e)(1). *See In re RiseSmart Inc.*, 104 USPQ2d 1931, 1932 (TTAB 2012) ("[W]hen an applicant responds to a refusal based on mere descriptiveness of a mark, or portion of a mark, by claiming acquired distinctiveness, such amendment to seek registration under Section 2(f) of the Trademark Act is considered an admission that the proposed mark is not inherently distinctive."). *See also Cold War Museum Inc. v. Cold War Air Museum Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1629 (Fed. Cir. 2009). Accordingly, Applicant's contention that its applied-for mark is not merely descriptive (16 TTABVUE 6-9) is untenable.[7]

The term "medical" means "of or relating to the science or practice of medicine." (dictionary.com; 6 TTABVUE 21). "Extrusion" is defined as "the act of extruding or the state of being extruded; something that is extruded." (dictionary.com; 6 TTABVUE 28). The record also includes a Wikipedia entry for the term "Extrusion,"

---

[7] Applicant originally claimed Section 2(f) in the alternative during examination. *See* March 10, 2014 Examiner's Amendment ("In the 2/27/14 Office Action the Applicant submitted a claim of acquired distinctiveness based on at least 5 years use under Section 2(f) in the alternative to the Merely Descriptive Refusal issued. Per Applicant's instructions, the claim is now entered into the record to obviate the Refusal."). This "alternative" position was waived when Applicant chose not to appeal the mere descriptiveness refusal, and allowed the application to be published for opposition with a Section 2(f) claim. *See generally* TMEP § 1212.02(c) (Apr. 2017).

11

describing it, in relevant part, as a process by which material is pushed through a die to create objects of a fixed cross-section profile; in the medical field, the parties use this process to create medical tubing (e.g., catheters). The term "technology" is defined as "a scientific or industrial process, invention, method, or the like (plural: technologies)." (dictionary.com; 6 TTABVUE 34).

The record includes numerous examples of third-party uses of the wording "medical extrusion," "extrusion technolog(y/ies)" and phrases such as "medical extrusion industry" and "medical extrusion technolog(y/ies)" in connection with goods of the types identified in Applicant's application as emphasized in the following:

> Understanding the challenges of trends in **medical extrusion** and miniaturization
> Current trends in **medical extrusion** can be summed up by considering that function of the extruded part is becoming more specific, less invasive, safer, and qualitatively statistically verifiable.
> As the extruded parts become more specialized so does the **extrusion technology** required to produce those parts challenging the custom extruder's expertise, agility and resources.
> All the major extruder manufacturers that have committed to serving the **medical extrusion industry** have developed downsized extruders capable of the low outputs necessary in extruding many smaller medical tubes.
> (medicaldesign.com; 6 TTABVUE 40-43)
>
> Comprehensive **Medical Extrusion Technologies**
> Putnam Plastics provides a range of **extrusion technologies** for medical catheters and minimally invasive devices.
> (polymedexgroup.com; 6 TTABVUE 45)
>
> Putnam Plastics has grown into a leader in the field of **medical extrusion** . . . "We're a **medical extrusion technology** leader, so we are prepared for any challenge

12

that comes our way."
(ptonline.com; 6 TTABVUE 50-51)

Advancements and Challenges in **Medical Extrusion Technology**
(kuhne.com; 6 TTABVUE 55)

Brian Pederson
22 years' experience in **medical extrusion technology**
(linkedin.com; 6 TTABVUE 58)

**Medical Extrusion Technology** Q&A
(euro.canon-experts.com; 6 TTABVUE 62)

Ask the experts at Microspec questions about **medical extrusion technology** now. The company has become a world leader in the **medical extrusion industry** with a reputation in precision extrusions based upon consistency and quality.
(qmed.com; 6 TTABVUE 68)

We employ the most sophisticated **medical extrusion technology** to produce our tapered catheters for research.
(sai-infusion.com; 6 TTABVUE 72)

Why You Need to Keep an Eye on **Medical Extrusion**
One might think that the production of medical tubing is fairly straightforward. But **medical extrusion**, now increasingly automated, **requires sophisticated technology**.
(qmed.com; 6 TTABVUE 80)

ExtruMed Precision **Medical Extrusion** of Thermoplastics and Silicone
(vestainc.com; 6 TTABVUE 87)

**Medical Extrusions**
New England Catheter specializes in custom **medical extrusions**.
(necatheter.com; 6 TTABVUE 90)

> **Medical Extrusions**
> AdvancedCath **employs the latest technology** with six in-house extrusion lines to provide tight tolerance and high-quality **medical extrusions** quickly and efficiently. (advancedcathetermanufacturing.com; 6 TTABVUE 94)
>
> Davis-Standard has introduced a series of small profile tubing dies aimed at the **medical extrusion market**. (Plastics World; 6 TTABVUE 100)

One of Applicant's advertisements is headlined indicating that Applicant specializes in "Precision Medical Extrusions." 12 TTABVUE 161, 165. Applicant's specimen indicates that Applicant "offer[s] solutions to your challenges through innovative extrusion techniques." A typical representation of Applicant's use of its proposed mark is shown below.



Applicant owns the domain name "medicalextrusion.com" and, according to Tom Bauer, Applicant's founder and president, Applicant chose it because "it was descriptive without being overly long and a burden for someone to enter. . . . descriptive of our company." 12 TTABVUE 95-96.

Applicant also took the testimony of James Michael Taylor, founder of Modified Polymer Components; Mr. Taylor is an inventor in the industry and owner of several patents. 11 TTABVUE 21-22. Mr. Taylor's company (he sold it in 2013) was a customer of Applicant's, purchasing medical extrusion tubing and then using it to manufacture medical devices. 11 TTABVUE 27. Mr. Taylor described Applicant's business and answered the question about whether "medical extrusion technology"

identifies the field of business: "I believe that the name 'medical extrusion technologies' describes what the company does precisely"; that it is an exact description [of what the company does]." 11 TTABVUE 63. Mr. Taylor added that "'medical extrusion' is descriptive of the entire field." 11 TTABVUE 82. In this connection, Mr. Taylor said he was "surprised they [Applicant] got it [the applied-for mark]." *Id.* Mr. Taylor went on to state that "medical extrusion technologies describes what they possess. That is not what they sell." 11 TTABVUE 91.[8]

Each of the words comprising Applicant's proposed mark, "medical," "extrusion," and "technologies," is highly descriptive of goods of the types produced by Applicant. Moreover, when combined, the composite terminology MEDICAL EXTRUSION TECHNOLOGIES is, at the very least, highly descriptive of medical extrusion goods produced by employing medical extrusion technologies. *See, e.g.*, *DuoProSS Meditech Corp. v. Inviro Med. Devices Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1759 (Fed. Cir. 2012) (finding SNAP SIMPLY SAFER merely descriptive for cannulae, needles, and syringes); *Remington Prods. Inc. v. North Am. Philips Corp.*, 892 F.2d 1576, 13 USPQ2d 1444, 1448 (Fed. Cir. 1990) ("travel care" is merely descriptive in light of, among other evidence, advertisements using the term descriptively); *In re Positec Grp. Ltd.*, 108 USPQ2d 1161, 1173 (TTAB 2013) (holding SUPERJAWS merely descriptive for tools). Clearly, no thought or imagination is required to immediately understand that medical extrusion products sold under the designation MEDICAL

---

[8] We read Mr. Taylor's statement as a strained attempt to avoid calling the proposed mark "descriptive" of the identified goods. In any event, the use of "medical extrusion technologies" to produce these goods means that the phrase remains merely descriptive of them as products resulting from the use of "medical extrusion technologies."

EXTRUSION TECHNOLOGIES are just that, namely, medical extrusion goods produced by using medical extrusion technologies (or methods or processes). *See In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089-90 (Fed. Cir. 2005) (citing *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978) ("The major reasons for not protecting such [merely descriptive] marks are: (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products.")).

Accordingly, we conclude that Applicant's proposed mark is highly descriptive of Applicant's goods under Section 2(e)(1).

**Acquired Distinctiveness**

As noted above, Applicant bears the ultimate burden of proving acquired distinctiveness by a preponderance of the evidence, and the amount of proof required to carry that burden increases when the wording sought to be placed on the Principal Register under Section 2(f) is highly descriptive. Because we have found that the wording MEDICAL EXTRUSION TECHNOLOGIES is highly descriptive of Applicant's goods, Applicant's burden of establishing acquired distinctiveness under Section 2(f) is commensurately high. *See In re Steelbuilding.com,* 75 USPQ2d at 1424; *In re Bongrain Int'l Corp.*, 894 F.2d 1316, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990); *In re Greenliant Sys. Ltd.,* 97 USPQ2d at 1085.

16

"To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself." *In re Steelbuilding.com,* 75 USPQ2d at 1422. *See also Coach Servs.,* 101 USPQ2d at 1729. Our ultimate Section 2(f) analysis and determination in this case is based on all of the evidence considered as a whole. In determining whether Applicant has demonstrated acquired distinctiveness of the proposed mark MEDICAL EXTRUSION TECHNOLOGIES for its goods, the Board will examine the evidence of record, including any evidence of advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source). *In re Steelbuilding.com*, 75 USPQ2d at 1424; *Cicena Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 14 USPQ2d 1401, 1406 (Fed. Cir. 1990). On this list, no single fact is determinative. *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009). *See also In re Ennco Display Sys. Inc.*, 56 USPQ2d 1279, 1283 (TTAB 2000) ("Direct evidence [of acquired distinctiveness] includes actual testimony, declarations or surveys of consumers as their state of mind. Circumstantial evidence, on the other hand, is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any similar evidence showing wide exposure of the mark to consumers.").

The Examining Attorney accepted Applicant's claim of acquired distinctiveness based on Applicant's declaration of continuous use of MEDICAL EXTRUSION

17

TECHNOLOGIES in commerce since 1990, signed by Mr. Bauer. (February 27, 2014 Response to Office Action; March 10, 2014 Office Action).[9] As we have stated in prior cases, we again point out that the Board is not bound by the Examining Attorney's decision to allow publication of the mark. *See In re La. Fish Fry Prods., Ltd.*, 116 USPQ2d at 1265; *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1765 (TTAB 2013), *aff'd mem.*, 565 Fed. Appx. 900 (Fed. Cir. 2014).

We now direct our attention to Applicant's testimony and other evidence introduced at trial in further support of its Section 2(f) claim of acquired distinctiveness. Mr. Bauer founded Applicant in 1990. 12 TTABVUE 11. Applicant began using the designation MEDICAL EXTRUSION TECHNOLOGIES in connection with medical extrusions in 1991. Mr. Bauer states that "a medical extrusion" is "a tube," such as a catheter, 12 TTABVUE 55-56, and that "a customer comes to us with a concept, and we will do what it takes to build that specification for them." 12 TTABVUE 60. Manufacturers in the industry, including the parties, employ a variety of high technology extrusion methods, such as multi-lumen extrusion, miniature extrusions, tapered extrusions, and braid reinforced extrusions. 12 TTABVUE 106.

---

[9] We note that conspicuously absent from Mr. Bauer's declaration is a claim that Applicant's use was "substantially exclusive." Although Mr. Bauer attests to Applicant's use in commerce dating back to 1990, along with trade show attendance and advertising, a close reading of the declaration reveals that no mention is ever made that the use was "substantially exclusive." TMEP § 1212.05(d) sets forth guidelines regarding the form and language appropriate for a claim of acquired distinctiveness under Section 2(f), including the following: "The wording 'substantially exclusive and continuous use of the mark in commerce' is essential."

For the period 2000-2015 Applicant attended major trade shows on an annual basis; and more recently Applicant has attended four shows per year. 12 TTABVUE 14. At its booths at the shows Applicant hands out pens and French scales (little plastic cards showing a ruler and sizes of catheters), all of which display Applicant's name. 12 TTABVUE 52. Applicant also advertises in industry publications that are known to the medical trade, such as Medical Device and Diagnostic Industry (MDDI), Medical Product Manufacturing News (MPMN), Medical Product Outsourcing (MPO) and Medical Design Technology (MDT). 12 TTABVUE 20-21. Applicant historically has placed monthly (or at least most months in a year) advertisements, "either a classified ad, a small ad" or, if the magazine featured an article on medical extrusion, then Applicant might place "a larger ad." 12 TTABVUE 24-25. All of Applicant's trade show appearances and trade magazine advertisements feature Applicant's trade name "Medical Extrusion Technologies." In 2000, Mr. Bauer estimates, Applicant's annual marketing expenditures were about $25,000; now Applicant spends approximately $75,000 per year on advertising. 12 TTABVUE 20. Applicant hosted a private golf tournament in September 2015 for about 100 of its customers. Other than this golf event, Applicant has not "hosted other events for customers outside of trade shows." 12 TTABVUE 31-32. Applicant also has been recognized as a customer in a bank's annual report; by a local youth sports team for its support; and for advertising in a specific trade magazine that, according to Applicant, "achieved outstanding readership response," although what that means has not been explained. 12

TTABVUE 37-39. Applicant's phone is answered "Medical Extrusion Technologies." 12 TTABVUE 88.

According to Mr. Bauer, there are "twenty-five[,] plus or minus five[,] primary competitors" in the medical extrusion field. 12 TTABVUE 109-10. However, Mr. Bauer has never heard the phrase "medical extrusion technologies" used to refer to a business or a brand other than Applicant, until he became aware of Opposer's use as part of Opposer's trade name. 12 TTABVUE 33-35. According to Mr. Bauer, since Applicant's first sale in 1991, Applicant's use of the phrase has been exclusive. Further, Mr. Bauer opines that the wording has "no specific definition within the industry" and does not "identify a product in [the] industry." 12 TTABVUE 53. Mr. Bauer appears to acknowledge others' use of "medical extrusion," but went on to reiterate that there is no "fixed definition that everybody accepts in the industry for the phrase 'medical extrusion.'" 12 TTABVUE 124.[10]

In rebuttal of Applicant's showing, Opposer offered the testimony of Mr. Hallam, who has been in the medical extrusion industry for twenty years. He testified that the parties have appeared at the same trade shows. 9 TTABVUE 14. Insofar as Opposer's own use of "Medical Extrusion Technologies" in its trade name is concerned, Mr. Hallam testified to his belief that Opposer added "Technologies" to its trade name in May/June 2014. 9 TTABVUE 45. Mr. Hallam testified that a third party, Monolithic Industries, owns the website address

---

[10] The fact that Mr. Bauer never heard of other uses does not establish that there are none. Further, there is some inconsistency between Mr. Bauer's testimony that he has never heard of others' use of "medical extrusion technologies," and his later statement that there is no fixed definition of "medical extrusion" in the industry.

"medicalextrusiontechnologies.com." 9 TTABVUE 16. Mr. Hallam further identified a competitor of the parties, Putnam Plastics, as "one of the major players" in the "medical extrusion industry." 9 TTABVUE 17-18. This fact was confirmed by Applicant's witnesses, Messrs. Taylor and Bauer. 11 TTABVUE 38-39; 12 TTABVUE 73. Putnam Plastics has been described as providing "comprehensive medical extrusion technologies to hundreds of companies around the world" in an industry directory. 9 TTABVUE 18-19. Putnam Plastics describes itself in a brochure as "a medical extrusion technology leader," 11 TTABVUE 40, engaged in "Comprehensive Medical Extrusion Technologies." 9 TTABVUE 20-21; 75-97. Examples of Putnam's use are shown below, reflecting use in its advertising brochures, on social media (LinkedIn and Facebook websites), and signage at trade shows.





Timothy Steele, CEO and founder of MicroSpec Corporation, identified as "a major player in the medical extrusion field," stated in an article in Medical Design magazine: "As the extruded parts become more specialized, so does the extrusion technology required to produce those parts . . . ." 12 TTABVUE 82-83. An advertisement of MicroSpec Medical Extrusions appearing in Medical Product Outsourcing magazine in October, 2012 touts its business activities as "Redefining the limits of extrusion technology. . . . For over 20 years, medical device companies

the world over have turned to MicroSpec for medical tubing that challenges the limits of extrusion technology." 11 TTABVUE 56-57.

The nature and number of third-party descriptive uses in the record indicate that use by Applicant has not been "substantially exclusive" as is required for a showing of acquired distinctiveness under Section 2(f). Non-exclusive use presents a serious problem for Applicant in obtaining trademark rights in a designation that is not inherently distinctive, because it interferes with the relevant public's perception of the designation as an indicator of a single source. *See, e.g., Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984) ("When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances."); *Ayoub, Inc. v. ACS Ayoub Carpet Serv.*, 118 USPQ2d 1392, 1404 (TTAB 2016) (finding that, because of widespread third-party uses of the surname Ayoub in connection with rug, carpet and flooring businesses, applicant's use of the applied-for mark, AYOUB, was not "substantially exclusive" and thus the mark had not acquired distinctiveness in connection with applicant's identified carpet and rug services); *Miller v. Miller*, 105 USPQ2d at 1625 ("[I]t is clear from the record that applicant has not established that her use of MILLER is substantially exclusive as required by Section 2(f)."); *Nextel Commc'ns, Inc. v. Motorola, Inc.*, 91 USPQ2d 1393, 1408 (TTAB 2009) (finding opposer's contemporaneous use of the proposed mark in connection with services closely related to applicant's goods rose to the level

22

necessary to rebut applicant's contention of substantially exclusive use); *Target Brands, Inc. v. Hughes*, 85 USPQ2d 1676, 1682-83 (TTAB 2007) (finding substantial use of proposed mark by opposer's parent company and additional use of it by numerous third parties "seriously undercuts if not nullifies applicant's claim of acquired distinctiveness"); *Marshall Field & Co. v. Mrs. Fields Cookies,* 11 USPQ2d 1355, 1357-58 (TTAB 1989) ("[T]he existence of numerous third-party users of a mark, even if junior, might well have a material impact on the Examiner's decision to accept a party's claim of distinctiveness."); *Flowers Indus. Inc. v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1588-89 (TTAB 1987) ("[L]ong and continuous use alone is insufficient to show secondary meaning where the use is not substantially exclusive.").

As noted above, Applicant asserts that it is unaware that anyone else in the industry uses the specific wording MEDICAL EXTRUSION TECHNOLOGIES *as a trademark* in connection with the same or similar goods. Arguments similar to Applicant's argument have proved unavailing. *See, e.g., DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656, 129 USPQ 275, 279 (CCPA 1961) ("Power Shop" for woodworking saws is not substantially exclusive "in view of [Opposer's] millions of competitive and continuing uses of 'power shop.'"). However, even assuming that Applicant may be the first or only user of the wording MEDICAL EXTRUSION TECHNOLOGIES as a purported trademark in the medical extrusion industry, we find that this fact does not negate the highly descriptive nature of the wording or suffice to establish acquired distinctiveness in this case. *See J. Kohnstam, Ltd. v.*

*Louis Marx & Co.*, 280 F.2d 437, 126 USPQ 362, 364 (CCPA 1960); *In re Greenliant Sys. Ltd.*, 97 USPQ2d at 1083; *In re Mortg. Bankers Ass'n of Am.*, 226 USPQ 954, 956 (TTAB 1985); *In re Nat'l Shooting Sports Found., Inc.*, 219 USPQ 1018 (TTAB 1983).

The evidence of third-party uses of the terminology "medical extrusion technology" or "medical extrusion technologies" in connection with medical extrusion goods militates against Applicant's claim of acquired distinctiveness.[11] The fact that this wording has been used repeatedly by unrelated entities in the industry is inconsistent with the requirement of acquired distinctiveness that the word indicate a single source. Given the number of third-party uses, consumers are likely to perceive the word "medical extrusion technologies" when used for medical extrusion goods, not as a trademark for one company, but rather as common terminology used by different entities in the industry to describe those goods. *See Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361 (CCPA 1972). As the Board stated in a similar case:

> [T]he average cigarette consumer would be likely to equate "ENRICHED FLAVOR" with other similar designations [*e.g.*, "Full Rich Tobacco Flavor," "Full Flavor," and "Rich Tobacco Flavor"] that he or she has been exposed to over the years and attribute it to the same descriptive significance intended by the other phrases, namely, a message to the effect that applicant's "MERIT" cigarettes have an enriched flavor or, if you will, a rich full flavor.

---

[11] Opposer does not appear to claim trademark rights in the wording "medical extrusion technologies," but rather is seeking to ensure its continuing right to use the wording descriptively (as for example, in its trade name) for its own medical extrusion goods unfettered by any claim or potential claim by Applicant of infringement.

*R.J. Reynolds Tobacco Co. v. Philip Morris, Inc.*, 210 USPQ 34, 42 (TTAB 1981). Likewise, consumers would equate the words "medical extrusion technologies" and "medical extrusion technology" to convey the same highly descriptive significance.

Notwithstanding Applicant's remarks to the contrary, the registration sought by Applicant, if granted, would be inconsistent with Opposer's right to use the wording descriptively for its own types of medical extrusion products. As the predecessor of our primary reviewing court stated:

> [Opposer] asserts, and we must agree, that it is entirely within its rights in using as a descriptive designation of its business the phrase "THE HOUSE OF FLAVOR." It must be emphasized that [Opposer] is not asserting trademark rights but merely freedom to continue a descriptive use. Certainly this right would be placed in jeopardy by a grant of registration as sought by [Applicant] on the Principal Register with its attendant presumptions of validity, ownership and the right to exclusive use.

*McCormick & Co. v. Summers*, 354 F.2d 668, 148 USPQ 272, 276 (CCPA 1966). *See also Levi Strauss & Co. v. Genesco, Inc., supra*; *Roselux Chem. Co. v. Parsons Ammonia Co.*, 299 F.2d 855, 132 USPQ 627 (CCPA 1962); *Goodyear Tire and Rubber Co. v. Interco Tire Corp.*, 49 USPQ2d 1705 (TTAB 1998).

In view of the above, we find that Applicant's use of MEDICAL EXTRUSION TECHNOLOGIES has not been substantially exclusive as required under Section 2(f).

In our review of the entire record, we also considered Applicant's statement that it has used the designation MEDICAL EXTRUSION TECHNOLOGY since 1991. Applicant's website indicates that it has "25+ years of experience in medical extrusion

products." (medicalextrusion.com; 6 TTABVUE 78). It is well settled that an applicant's use of wording for a long time does not necessarily establish that the wording has acquired distinctiveness as a mark. *See, e.g., Alcatraz Media,* 107 USPQ2d at 1776; *In re Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984); *In re The Interstate Folding Box Co.*, 167 USPQ 241, 245 (TTAB 1970). In the present case, this length of use is outweighed by the other evidence showing that the phrase "medical extrusion technologies" is highly descriptive, and the absence of any additional direct evidence showing recognition of the wording by consumers as a source indicator for Applicant's goods.

Although we recognize there is evidence showing Applicant's use of the wording MEDICAL EXTRUSION TECHNOLOGIES on its goods, that fact, in and of itself, does not establish that consumers perceive the wording alone as an indication of source of the goods, rather than as a highly descriptive designation. Almost without exception, Applicant's proposed mark, whether used on the goods or in advertisements, appears in connection with the prominently displayed acronym MET. *See In re Mogen David Wine Corp.*, 372 F.2d 539, 152 USPQ 593, 595 (CCPA 1967) (where advertising depicting the bottle design sought to be registered always featured the word mark MOGEN DAVID, such evidence failed to prove acquired distinctiveness in the design itself); *In re Franklin County Historical Soc'y,* 104 USPQ2d 1085, 1093 (TTAB 2012) (the applicant is not known by the proposed mark "CENTER OF SCIENCE AND INDUSTRY," but rather by the shortened acronym COSI, and that if any term has gained a degree of renown, it is the acronym; none of

the examples shows use of the proposed mark, "CENTER OF SCIENCE AND INDUSTRY," without the acronym COSI, and there is no indication that any goodwill associated with COSI has somehow been transferred to "CENTER OF SCIENCE AND INDUSTRY"). Simply put, we are not convinced that relevant purchasers associate the designation MEDICAL EXTRUSION TECHNOLOGIES, without the accompanying MET, solely with Applicant.

Not every word that appears on an entity's goods, regardless of how prominently it is displayed, functions as a trademark. Mere intent that a term function as a trademark is not enough in and of itself. *In re Morganroth*, 208 USPQ 284, 287 (TTAB 1980) ("Wishing does not make a trademark or service mark be."). Applicant's intent that the designation MEDICAL EXTRUSION TECHNOLOGIES, separate and apart from MET, serve as an indicator of source has no evidentiary effect.

We also note that, notwithstanding almost twenty-five years of use, the record is devoid of any sales figures whatsoever. Thus, we are at a disadvantage to accurately gauge the degree of exposure and the achievement of distinctiveness among the relevant classes of purchasers. *See Target Brands Inc. v. Hughes*, 85 USPQ2d 1676, 1681 (TTAB 2007) ("The sales figures for 14 years, standing alone and without any context in the trade, are not so impressive as to elevate applicant's highly descriptive designation to the status of a distinctive mark."); *In re Boston Beer Co.*, 53 USPQ2d at 1058; *In re Bongrain Int'l Corp.*, 13 USPQ2d at 1729. *See also In re Candy Bouquet Int'l, Inc.*, 73 USPQ2d 1883, 1888-89 (TTAB 2004).

Although we have considered Applicant's advertising and promotional efforts, Applicant's numbers are hardly impressive, falling far below levels deemed persuasive in other cases involving the acquired distinctiveness of marks that may be highly descriptive. *See, e.g., Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 10 USPQ2d 1443, 1447 (6th Cir. 1989) (finding that $100,000 for one year's advertising expenditures did not evidence secondary meaning in "Appalachian Log Structures" for log houses without additional evidence "to establish the amount as extensive or to distinguish it as beyond that necessary to survive in the market"). *Cf. In re Country Music Ass'n Inc.*, 100 USPQ2d 1824, 1834 (TTAB 2011). In any event, the ultimate test in determining whether a designation has acquired distinctiveness is applicant's success, rather than its efforts, in educating the public to associate the proposed mark with a single source. *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 422 (Fed. Cir. 1985); *In re LC Trademarks, Inc.*, 121 USPQ2d 1197, 1208 (TTAB 2016); *In re Pennzoil Prods. Co.*, 20 USPQ2d 1753, 1760-61 (TTAB 1991). The record is devoid of information regarding the number of visitors to Applicant's booths at trade shows, the volume of unique visitors to Applicant's website, and the circulation of the trade magazines in which Applicant's advertisements have appeared. In sum, the record falls far short of establishing that Applicant's promotional efforts have borne fruit with respect to acquired distinctiveness.

**Conclusion**

We find that Applicant has failed to establish that the designation MEDICAL EXTRUSION TECHNOLOGIES has acquired distinctiveness as a source-indicator for Applicant's medical extrusion goods. That is, Applicant has not established that, "in the minds of the public, the primary significance of [MEDICAL EXTRUSION TECHNOLOGIES] is to identify the source of the product rather than the product itself." *Coach Servs.*, 101 USPQ2d at 1729. Rather, the record establishes that the wording is a highly descriptive designation that identifies a significant feature of the goods, namely, Applicant's goods are the end products of medical extrusion technologies. The evidence of acquired distinctiveness must be weighed against the highly descriptive nature of the wording comprising Applicant's proposed mark. Given that the proposed mark is highly descriptive, much more evidence, especially in the quantity of direct evidence from the relevant purchasing public, than what Applicant has submitted would be necessary to show that the designation MEDICAL EXTRUSION TECHNOLOGIES has become distinctive for Applicant's medical extrusion goods.

We have considered all of the evidence made of record pertaining to the issues in this case, as well as all of the arguments related thereto, including any evidence and/or arguments not specifically discussed in this opinion. We find that the designation MEDICAL EXTRUSION TECHNOLOGIES is highly descriptive as applied to Applicant's medical extrusion goods. Accordingly, Applicant's burden of proving acquired distinctiveness is likewise very high. *See In re Steelbuilding.com*,

29

75 USPQ2d at 1424 ("The proposed mark is highly descriptive. Therefore, applicant had the burden to show a concomitantly high level of secondary meaning."). We find that Applicant has failed to carry that burden.

*Decision:* The opposition is sustained, and registration to Applicant is refused.