This Opinion is a
Precedent of the TTAB

Mailed: April 26, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*M/S R.M. Dhariwal (HUF) 100% EOU*
*v.*
*Zarda King Ltd. and Global Technology & Trade Marks Limited*

_____

Opposition No. 91231033

_____

Robert W. Payne of Payne IP Law for M/S R.M. Dhariwal (HUF) 100% EOU.

Roy Banerjee and Angelina Whitaker of KPPB Law for Zarda King Ltd. and Global Technology & Trade Marks Limited.

_____

Before Cataldo, Goodman and Larkin,
    Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

   Zarda King Ltd. and Global Technology & Trade Marks Limited[1] (jointly,

---

[1] During the proceeding, the Board joined assignee Global Technology & Trade Marks Limited as a party defendant after Applicant filed a notice of assignment. 18 TTABVUE; 20 TTABVUE.

References to the briefs and the record are to the Board's electronic docket system, TTABVUE.

"Applicant") filed an application to register the standard character mark MANIKCHAND on the Principal Register for "snuff"[2] in International Class 34.[3]

M/S R.M. Dhariwal (HUF) 100% EOU ("Opposer"),[4] a corporation organized under the laws of India (15 TTABVUE 1, ¶ 1), opposes registration of Applicant's mark under Trademark Act Section 2(c), 15 U.S.C. § 1052(c), on the ground that MANIKCHAND is the "personal name" of Rasiklal Manikchand Dhariwal, the founder of Opposer.[5] 15 TTABVUE 3, ¶ 8. Opposer alleges that Applicant's "mark MANIKCHAND consists or comprises the name of a particular individual – Plaintiff's founder, Rasiklal Manikchand Dhariwal." *Id*. at 3-4, ¶¶ 7-9. Opposer also alleges that MANIKCHAND has been prominently used by Opposer and is widely recognized by

---

[2] The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed form or regular fixed editions. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006). We take judicial notice of the following definition of snuff: "a preparation of pulverized tobacco to be inhaled through the nostrils, chewed, or placed against the gums." MERRIAM-WEBSTER DICTIONARY, (merriam-webster.com, last accessed February 22, 2019).

[3] Application Serial No. 87034664 was filed on May 12, 2016 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051. An amendment to allege use was filed June 24, 2016, alleging May 19, 2016 as the date of first use and first use in commerce.

[4] Opposer originally identified itself as Manikchand House, an informal name for Opposer, but later filed a stipulation to amend to its formal name, which the Board granted. 9 TTABVUE; 10 TTABVUE.

[5] In the original notice of opposition, filed November 14, 2016, MANIKCHAND was alleged to be the "recognized name of Shri Rasiklal Manikchand Dhariwal, a living individual." 1 TTABVUE 4, ¶ 4. In the amended notice of opposition, filed in late October 2017, there was no specific allegation that Mr. Dhariwal was a living individual. MANIKCHAND was simply alleged to be "part of Rasiklal Manikchand Dhariwal's personal name." 15 TTABVUE 3, ¶ 8. The amended notice included exhibits that were later introduced into the record with Opposer's testimony. The same amended notice of opposition was also filed at 14 TTABVUE without exhibits.

consumers in the United States to refer to Rasiklal Manikchand Dhariwal, the Manikchand Group, Opposer, and Opposer's products. *Id.* at 3-4, ¶¶ 8-9.

Opposer pleads ownership of an application to register the standard character mark MANIKCHAND GUTKHA for "chewing tobacco" in International Class 34,[6] and alleges that it previously owned a now-cancelled registration, Registration No. 3170364, for the same mark and goods; and that Applicant's applied-for mark has been cited as a potential bar to registration. *Id.* at 3, ¶ 6. Opposer also alleges that it has "continuously used" and "continues to use" the common law trademark MANIKCHAND for smokeless gutkha[7] and related tobacco products in United States commerce. *Id.* at 2, ¶ 3. Applicant filed an answer denying the salient allegations in the amended notice of opposition and asserting affirmative defenses.[8] 16 TTABVUE.

Each party filed a trial brief and Opposer filed a reply brief.

---

[6] Serial No. 87045600. 15 TTABVUE 3, ¶ 6. Opposer alleges that Applicant's application has been cited as a potential bar to registration. *Id.*

[7] It appears the pleading, in some places, misspells the word "gutkha" by transposing the letters k and h. We take judicial notice that gutkha is the British spelling for the term gutka OXFORD LIVING DICTIONARIES (BRITISH & WORLD ENGLISH) (en.oxforddictionaries.com, last accessed on February 22, 2019). *Cf. In re Thomas*, 79 USPQ2d 1021, 1025 (TTAB 2006) (Board took judicial notice of the translation of "marche noir" in both Cassell's French-English English-French Dictionary and Collins French Dictionary). We also take judicial notice that gutka is "[a] type of smokeless tobacco that is made in India and is widely used throughout Asia. It is a mixture of tobacco, crushed areca nut (also called betel nut), spices, and other ingredients. It is used like chewing tobacco and is placed in the mouth, usually between the gum and cheek." NCI (National Cancer Institute) Dictionary of Cancer Terms (www.cancer.gov/publications/dictionaries/cancer-terms/def/gutka, last accessed February 22, 2019). The Board may take judicial notice of official United States government publications. *In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1642 (TTAB 2015).

[8] Applicant alleged five affirmative defenses in its answer, of which only the third and fourth are true affirmative defenses. But because it did not take testimony or submit evidence on these defenses, they are considered to have been waived. *See Research in Motion Ltd. v. Defining Presence Mktg. Grp. Inc.*, 102 USPQ2d 1187, 1190 (TTAB 2012).

I. The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the involved application. In addition, Opposer introduced the declaration testimony of Prakash Rasiklal Dhariwal,[9] the "karta" of Opposer, which is the equivalent of the chief executive officer and president, with accompanying exhibits; and the declaration testimony of Sarabjit Bhasin, president of Evolution Enterprise Holding, Inc., the west coast distributor for Opposer, with accompanying exhibits. 17 TTABVUE.

Applicant introduced the testimony of Kamal Hans, president of a company that imports tobacco products from South Asia into the United States, who formerly was a consultant for a United States tobacco importer, with accompanying exhibits. 21 TTABVUE.

II. Evidentiary Matters

Applicant seeks to strike the declaration of Prakash Rasiklal Dhariwal because the unsworn declaration, although made under the penalty of perjury, did not refer to the laws of the United States, and lacked a statement of the date and the city where it was signed. 17 TTABVUE 2-4; 24 TTABUVE 10-11;[10] *see* Trademark Rule 2.20, 37 C.F.R. § 2.20; 28 U.S.C. § 1746. Opposer attempted to rectify this deficiency by

---

[9] There appears to be a typographical error in the title of the declaration as to Prakash Rasiklal Dhariwal's name.

[10] Applicant argues that the Declaration of Prakash Rasiklal Dhariwal must be stricken because the declaration does not comply with 28 U.S.C. § 1746 and 37 C.F.R. § 2.20. 24 TTABVUE 10.

attaching to its reply brief a signed and dated declaration with the location of Pune, India, 25 TTABVUE 14, but the substitute declaration again does not refer to the laws of the United States.

The attestation to the original declaration was worded and filed (with the underlined spaces left blank) as follows:

> Signed on December __, 2017 at _____[city], in _____[country],
> I declare under penalty of perjury that the foregoing is true and correct.

The substitute declaration, while providing a date and location, fails to refer to "the laws of the United States" and was attested to as follows:

> Signed on July 20th 2018 at Pune, in India. I declare under penalty of
> perjury that the foregoing is true and correct.

Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1), provides that testimony may be submitted in the form of a sworn affidavit or an unsworn declaration under Trademark Rule 2.20, 37 C.F.R. § 2.20. Trademark Rule 2.20 in turn provides that a declaration may use language referencing 18 U.S.C. § 1001.[11] Additionally, 35 U.S.C. § 25, authorizes the USPTO to accept a declaration under Trademark Rule 2.20 or the language of 28 U.S.C. § 1746. TRADEMARK MANUAL OF EXAMINING PROCEDURE

---

[11] The rule provides the following language for a signed and dated declaration referencing 18 U.S.C. § 1001:

> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

(TMEP) § 804.01(b) (October 2018). In either case, a declarant will be subject to United States perjury laws if willful or knowing false statements are made. *See In re Dermahose Inc.*, 82 USPQ2d 1793, 1797 (TTAB 2007) ("the common feature of oaths, sworn statements, unsworn declarations under penalty of perjury, and declarations under Rule 2.20 is that the person making the statement is subjecting himself or herself to criminal penalties for making statements that the person knows are not true."). When the declaration is signed in this country, United States law automatically applies, but if signed outside the country, the declarant must state his or her intent to be bound by United States law. As explained in *Jack v. Trans World Airlines*, 854 F. Supp. 654, 658 n.3 (N.D. Cal. 1994) regarding declarations made outside the United States:

> The purpose of requiring a person outside the United States to execute the document under penalty of perjury under the laws of the United States is to impress upon him the seriousness of the obligation to tell the truth and the possibility of prosecution for perjury if he fails to tell the truth. When a person executes a document outside the United States, a recitation that it is made under penalty of perjury without reference to which country's perjury laws will be applied provides no assurance of truthfulness because the penalty of perjury may be non-existent or trivial in the place where the person signed the document.

In this case, the declaration has not been made under 18 U.S.C. § 1001 as it lacks the necessary language and reference to this particular statute. Therefore we consider whether the declaration has been made properly under 28 U.S.C. § 1746.

An unsworn declaration made outside the United States under 28 U.S.C. § 1746 must be "substantially in the following form":

> I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature).[12]

*Cf.* TMEP 804.01(a)(i) (declaration under 28 U.S.C. §1746 executed outside the United States "must allege" execution under United States law to be valid); *see e.g.*, *Jack*, 854 F. Supp. at 658 (court had previously stricken twenty-four of plaintiffs' affidavits, made under 28 U.S.C. § 1746, most of which were executed outside the United States, because they were not confirmed by oath nor affirmation nor stated to be true and correct and made under penalty of perjury under the laws of the United States of America).

Neither the original declaration nor the substitute declaration substantially complies with 28 U.S.C. § 1746 due to the absence of the wording "under the laws of the United States" or its substantial equivalent.[13] Accordingly, Applicant's motion is granted to the extent that we do not consider the original or the substitute declaration of Prakash Rasiklal Dhariwal.

Opposer argues that the declaration testimony of Kamal Hans is "replete with statements which have no support" regarding consumer perception and that these statements should be stricken or disregarded. 22 TTABVUE 6. Whether testimony is

---

[12] When executing a declaration under 28 U.S.C. § 1746 within the United States, no specific reference to United States law is required. Although the form of declaration provided by Opposer included the specific location of the declarant, this is not a requirement under 28 U.S.C. § 1746.

[13] In addition, the substitute declaration has been untimely filed outside of Opposer's testimony period. Trademark Rules 2.121(a) and 2.123(a)(1); 37 C.F.R. §§ 2.121(a) and 2.123(a)(1).

supported by other evidence can be considered in determining its weight, but any lack of support does not render it inadmissible. The Board is capable of weighing the strength or weakness of objected-to testimony, including any inherent limitations. *Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1479 (TTAB 2017); *U.S. Playing Card Co. v. Harbro LLC*, 81 USPQ2d 1537, 1540 (TTAB 2006) ("[B]ecause an opposition is akin to a bench trial, the Board is capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding the admissibility of such testimony and evidence."). Therefore, the request to strike or disregard is denied.

III. Pleadings

We now consider the pleadings in this case.

It is well settled that an opposer may not rely on an unpleaded claim in its brief, and that to pursue an unpleaded claim, an opposer's pleading must be amended under Fed. R. Civ. P. 15(b) to assert the claim, or the claim must have been tried by express or implied consent. Fed. R. Civ. P. 15(b); *see e.g.*, *Hornby v. TJX Cos. Inc.*, 87 USPQ2d 1411, 1415 (TTAB 2008). Implied consent can only be found where the non-offering party (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue. *Citigroup Inc. v. Capital City Bank Grp. Inc.,* 94 USPQ2d 1645, 1656, *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011) (quoting Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 501.03(b)). "The question of whether an issue was tried by consent is basically one of fairness. The non-moving party must be aware

that the issue is being tried, and therefore there should be no doubt on this matter." *Morgan Creek Prods. Inc. v. Foria Int'l Inc.*, 91 USPQ2d 1134, 1139 (TTAB 2009).

In addition to its § 2(c) claim, Opposer, in its main brief, also has argued the ground of false suggestion of a connection, Section 2(a), 15 U.S.C. § 1052(a). 22 TTABVUE 8-9. Applicant objected, contending that Opposer failed to plead this ground in the notice of opposition and that the Board cannot consider it.[14] 24 TTABVUE 16. Because Applicant specifically objected to consideration of this claim, there has been no express consent.

Although a § 2(a) false suggestion of a connection claim includes some of the same allegations as a § 2(c) claim, *see Canovas v. Venezia 80 S.R.L.*, 220 USPQ 660, 662 (TTAB 1983), Opposer did not specifically assert this ground as a separate claim in the notice of opposition. In addition, we do not find Opposer's declaration testimony at trial (including the now-stricken Dhariwal declaration) to have included any indication to Applicant that a false suggestion of a connection claim was being tried. Because we cannot say that Applicant was on notice that Opposer was asserting such a claim, we find that it was not tried with Applicant's implied consent. Therefore, we only consider whether Opposer has proven the § 2(c) claim.

---

[14] Opposer also argues in its brief that "Formulation By Rasiklal Manikchand Dhariwal" is a common law mark. 22 TTABVUE 10-11. In the notice of opposition, Opposer only has alleged that this phrase is a "prominent statement." 15 TTABVUE 4, ¶ 10. We find this argument also is directed to an unpleaded claim that has not been tried by express or implied consent.

IV.    Standing and Privity

A threshold issue in every inter partes case is the plaintiff's standing to challenge registration. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). To establish its standing, Opposer must prove that it has a "real interest" in the proceeding as well as a "reasonable" basis for its belief of damage. *Id.*; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

Standing to assert a § 2(c) claim may be established by facts that Opposer is a competitor of Applicant that has a present or prospective right to use the name MANIKCHAND. *Cf. Grote Indus., Inc. v. Truck-Lite Co.,* 126 USPQ2d 1197, 1201-02 (TTAB 2018) (standing established by applicant's admissions that the parties are competitors in the truck light industry); *Eastman Kodak Co. v. Bell & Howell Document Management Products Co.*, 23 USPQ2d 1878, 1879 (TTAB 1992) (standing established by opposer's showing that it was a competitor that had a present or prospective right to use the numerical designations that made up Applicant's marks descriptively in its business). *See also Azeka Bldg. Corp. v. Azeka,* 122 USPQ2d 1477, 1479 (TTAB 2017) (the inclusion of AZEKA in opposer's corporate name, and the fact that it is also the surname of opposer's president, sufficient to prove opposer's standing to bring a surname claim); *Societe Civile Des Domaines Dourthe Freres v. S.A. Consortium Vinicole De Bordeaux Et De La Gironde*, 6 USPQ2d 1205, 1207 (TTAB 1988) (allegations of use by a corporate opposer of the challenged term as part

of its corporate name in connection with the same or similar goods or services, as well as filing of an application to register a mark which had been suspended pending resolution of opposition, show "sufficient commercial interest in the subject matter of this proceeding to establish the standing of opposer.").

Opposer's witness Sarabjit Bhasin testified that Opposer is part of the Manikchand group of companies known as the "Manikchand Group." 17 TTABVUE 8, ¶ 2. Mr Bhasin also testified that MANIKCHAND has been used prominently by Opposer in association with tobacco products sold in the United States and that Opposer's "product is sometimes sold by vendors in the United States as 'RMD MANIKCHAND.'" 17 TTABVUE 9, ¶ 3.[15] This testimony supports a finding that Opposer has a "real interest" in the proceeding and a "reasonable" basis for its belief of damage, *Ritchie*, 50 USPQ2d at 1025, and is sufficient to establish standing.

Apart from standing, "an element of the § 2(c) ground is that the party asserting that ground must have a cognizable or proprietary right in the name." *Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.*, 32 USPQ2d 1192, 1194 (TTAB 1994) ("applicant's failure in this case is not in connection with proving its standing to assert this ground, but in proving that it has any linkage or relationship with an individual known as the Duca D'Aosta upon which it could assert this third party's rights."). A party in privity with an individual can bring a § 2(c) claim. *Id*.

---

[15] The declaration was mis-numbered and contains two paragraphs identified as ¶ 3, and two paragraphs identified as ¶ 4.

Mr. Bhasin testified that Rasiklal Manikchand Dhariwal was the founder of the Manikchand Group of companies, which includes Opposer, and that Opposer's products have been sold in the United States in association with the MANIKCHAND name. 17 TTABVUE 8-9, ¶¶ 2, 3 ("Rasiklal Manikchand Dhariwal was the founder of the Manikchand group of companies … One of those companies is Opposer M/S R. M. Dhariwal (HUF) 100% EOU, a company based in India."). Mr. Bhasin testified that "on each package of our RMD-branded products is the following, prominent statement: 'Formulation by Rasiklal Manikchand Dhariwal.'" Bhasin Declaration 17 TTABVUE 9, ¶ 3. This testimony supports a finding of privity between Opposer and Rasiklal Manikchand Dhariwal, for purposes of asserting an opposition based on section 2(c). *Cf. John W. Carson Foundation v. Toilets.com Inc.*, 94 USPQ2d 1942, 1947 (TTAB 2010) (for purposes of preclusion, privity found between decedent and his foundation (plaintiff); privity also found between sole owner and president and his company (defendant)) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 27 USPQ2d 1046, 1049 (D.N.H. 1992) (founder and CEO of corporation in privity with corporation)).

V. Opposer's claim that Applicant failed to obtain the written consent of Rasiklal Manikchand Dhariwal, founder of Opposer, to register the name Manikchand, as required under Section 2(c)

Section 2(c) of the Trademark Act prohibits registration of a mark that consists of or comprises a name, portrait, or signature identifying a particular living individual except by his or her written consent. This provision is intended to protect the right of

privacy and right of publicity that a living person has in his or her identity.[16] *In re Hoefflin,* 97 USPQ2d 1174, 1176 (TTAB 2010) (citing 2 J. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §§ 10.07, 28.1 and 28.46 (4th ed. 2010)); *Canovas,* 220 USPQ at 661 (citing *Univ. of Notre Dame v. J.C. Foods Imps.,* 703 F.2d 1372, 217 USPQ 505, 509 (Fed.Cir. 1983)). The provisions of § 2(c) are applicable to "not only full names, but also surnames, shortened names, nicknames, etc., so long as the name in question does, in fact, 'identify' a particular living individual." *In re Sauer*, 27 USPQ2d 1073, 1074-75 (TTAB 1993), *aff'd,* 26 F.3d 140 (Fed. Cir. 1994), (citing *Societe Civile Des Domaines Dourthe Freres,* 6 USPQ2d at 1205; *In re D.B. Kaplan's Delicatessen,* 225 USPQ 342 (TTAB 1985); and *John Anthony, Inc. v. Fashions by John Anthony, Inc.,* 209 USPQ 517 (TTAB 1990)). *See also Reed v. Bakers Engineering & Equipment Co.*, 100 USPQ 196, 199 (Exam'r in Chief 1954) ("[S]ection 2(c) is not restricted to the full name of an individual but refers to any name regardless of whether it is a full name, or a surname or given name, or even a nickname, which identifies a particular living individual, although in the case of the use of the surname only it is possible that the name may lose all significance of identifying a particular individual.").

MANIKCHAND is Rasiklal Manikchand Dhariwal's middle name. Bhasin Declaration 17 TTABVUE 8, ¶ 4. ("'Manikchand' was part of Rasiklal Manikchand

---

[16] A right of publicity is "the inherent right of every human being to control the commercial use of his or her identity." 1 J. Thomas McCarthy, THE RIGHTS OF PUBLICITY AND PRIVACY § 1:3 (2d ed. Apr. 2018 update). The legal definition of a "right of privacy" is "the right of a person to be free from intrusion into or publicity concerning matters of a personal nature—called also right to privacy." MERRIAM-WEBSTER DICTIONARY, (merriam-webster.com last accessed February 22, 2019).

Dhariwal's personal name. It was his middle name."). As a shortened name it would fall within the provisions of § 2(c) if Opposer establishes that MANIKCHAND, as used on the goods recited in the involved application, points to Rasiklal Manikchand Dhariwal as a "particular living individual." *Nike, Inc. v. Palm Beach Crossfit Inc.*, 116 USPQ2d 1025, 1033 (TTAB 2015); *Ross v. Analytical Tech. Inc.*, 51 USPQ2d 1269, 1274 (TTAB 1999).

The Board has set forth two factors to be considered in determining whether a "name" identifies a particular living individual for purposes of § 2(c): 1) if the person is so well known that the public would reasonably assume the connection, or 2) if the person is publicly connected with the business in which the mark is being used.[17] *Nike, Inc. v. Palm Beach Crossfit Inc.*, 116 USPQ2d at 1032-33 ("To sufficiently allege a Section 2(c) claim, a plaintiff must allege that the mark 'consists of or comprises' the name, image, likeness or signature of a particular living individual, and that he or she is so well known that the public would reasonably assume a connection between the mark and the individual, or that, because the individual is publicly connected with the business or field of the identified goods or services, such connection would be assumed.") (citing *Martin v. Carter Hawley Hale Stores, Inc.*, 206 USPQ 931, 933 (TTAB 1979)); *see also Krause v. Krause Publ'ns Inc.*, 76 USPQ2d 1904, 1909-10 (TTAB 2005) (quoting *Martin*, 206 UPSQ at 933).

---

[17] Section 2(c) "was not designed to protect every person from having a name which is similar or identical to his or her name registered as a trademark . . . Rather, the Statute was intended to protect one who, for valid reasons, could expect to suffer damage from another's trademark use of his name." *Martin*, 206 USPQ at 933.

We also consider whether the public recognition of the "name" remains at the time of trial. *Ross*, 51 USPQ2d at 1275. In other cases involving claims that measure consumer perception, the Board often considers the factual situation at the time of trial. *TiVo Brands LLC v. Tivoli, LLC*, 129 USPQ2d 1097, 1113 n.69 (TTAB 2018). *See, e.g., McCormick & Co., Inc. v. Summ*ers, 354 F.2d 668, 148 USPQ 272, 276 (CCPA 1966) (registrability of a mark must be determined on the basis of facts as they exist at the time when the issue of registrability is under consideration; in an opposition proceeding, Board considered customer letters two years after application filed in connection with a claim of lack of distinctiveness under § 2(f)); *TiVo Brands*, 129 USPQ2d at 1113 ("a rational reading of the [dilution] statute compels us to inquire into the continuing status of a mark asserted under a Section 43(c) claim and to hold that it is capable of being diluted within the meaning of the statute only if it is famous at the time the claim is adjudicated"); *Gen. Foods Corp. v. MGD Partners*, 224 USPQ 479, 486 (TTAB 1984) (in assessing secondary meaning, the right to registration is determined "on the basis of the factual situation at the time registration is under consideration, including during and throughout the pendency of ex parte and inter parte proceedings in which the mark may be involved") (citing *In re Thunderbird Prods. Corp.*, 406 F.2d 1389, 160 USPQ 730, 732 (CCPA 1969); *Hartford Fire Ins. Co. v. The Structured Settlements Co.*, 215 USPQ 1145, 1150 (TTAB 1982)).

Because a § 2(c) claim is based on public association with the name of a particular living individual, the question of present-day recognition by the public must be considered at the time registration is sought, since an individual's notoriety with the

public could fade over time. *Cf. TiVo Brands*, 129 USPQ2d at 1113 ("unless the plaintiff owns a famous mark at the time it brings the [dilution] claim, and by extension, retains its fame through trial, this provision of the statute cannot be satisfied"). In *Ross*, the Board found that opposer had established a past public association of the name "Ross" with opposer as an inventor in the field of electrochemical analaysis in the period ranging from the late 1960's to 1985 and also that a present-day association remained. 51 USPQ2d at 1275. Thus, in connection with a § 2(c) claim, we must consider all evidence properly presented up to the close of trial. *Id*.

When the opposition was filed in November 2016, Rasiklal Manikchand Dhariwal was alive, but he died during the pre-trial phase of this proceeding. Bhasin Declaration 17 TTABVUE 8, ¶ 3. ("Mr. Dhariwal died in late October, 2017."). In its brief, Opposer submits that:

> As for the founder's death, the Notice of Opposition in this case was filed November 4, 2016, according to the TTABVUE records. As the Declarations of Prakash Rasiklal Dhariwal and Sarabjit Bhasin state, the founder, Rasiklal Manikchand Dhariwal, died on October 25, 2017, a year after filing. His death has no bearing in this Opposition. Further, even if death were otherwise an issue, Opposer is part of a corporate organization which continues to use the MANIKCHAND name as organized and authorized by the founder, and it continues to use the MANIKCHAND name in commerce in India and the United States as shown in the evidence. Its rights continue despite the death of the individual whose name is in issue. TMEP 1203.03(a)(i).[18]

---

[18] The TMEP section to which Opposer refers discusses "persons" under § 2(a).

22 TTABVUE 9-10.

Because we must look to the record and the facts as of the time of trial, we must take into account that Rasiklal Manikchand Dhariwal died prior to trial. At first glance, it would seem that we have before us the same issue that was decided in *McGraw-Edison Co. v. Thomas Edison Life Ins. Co.*, 160 USPQ 685, 687 (TTAB 1969). The issue there was whether a corporation that had been assigned trademark rights in Thomas Edison's name could preempt use by another long after his death. The Board concluded that there was no cause of action under § 2(c) for use of Thomas Edison's name:

> The statute, by implication, provides for the registration of the name of a deceased person since it precludes from registration the name of a particular living individual except by his written consent or the name of a deceased President of the United States during the life of his widow, if any, except by the written consent of the widow. There is no other proscription.

*Id.* (citing § 2(c)).

Our case presents a slightly different issue, however, because the allegation is that the application was filed during Mr. Dhariwal's lifetime without his written consent, and he later died while the opposition proceeding was ongoing. Although Opposer argues that Mr. Dhariwal's death has no effect, we find that any right to preclude registration of his name under § 2(c) expired upon his death because he was the "particular living individual" protected by § 2(c) and he was no longer living at the time of trial. Whatever the facts were at the time the subject application was filed or when this proceeding commenced, evidence adduced at trial establishes that Mr. Dhairwal had by then passed away, extinguishing any right to oppose on the ground

that the mark in the subject application is the name of a *living* individual. To the extent that Opposer has rights regarding the use or registration of the MANIKCHAND name after Mr. Dhariwal's death, they do not arise under § 2(c). *McGraw-Edison*, 160 USPQ at 687 (holding that § 2(c) "by implication, provides for the registration of the name of a deceased person").

Opposer has failed to establish that Applicant's mark consists of or comprises the name of a particular living individual, the only pleaded claim.

**Decision:** Opposer's § 2(c) claim is dismissed.